## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DARRELL B. HOUSE,

      Plaintiff,

      vs.                              No. 22-cv-00970-SCY-KK

NATIONAL PARK SERVICE, a political
subdivision of the Federal government; CITY
OF ALBUQUERQUE, a political subdivision
of the State of New Mexico; DEB HAALAND,
in her official capacity only as U.S. Secretary
of the Interior; U.S. DEPARTMENT OF THE
INTERIOR; National Park Service Director,
CHARLES "CHUCK" SAMS III, in his official
and individual capacity; Former Deputy Director
of National Park Service, SHAWN BENGE,
in his official and individual capacity; Former
Counselor to the Secretary of the Interior,
MARGARET EVERSON, in her official and
individual capacity; Supervisory Park Ranger
SUSANA VILLANUEVA, in her official and
individual capacity; Officer GRADEN, officially
and in his individual capacity; Officer
WINELAND, officially and in his individual
capacity; officer I-X, officially and
in his individual capacity,

      Defendants.

## MOTION TO DISMISS

Defendants National Park Service ("NPS"); Deb Haaland, in her official

capacity as Secretary of the United States Department of the Interior; United States

Department of the Interior ("DOI"); Charles "Chuck" Sams III, in his official capacity

as Director of NPS; Shawn Benge, in his official capacity as the former Deputy

Director of NPS; Margaret Everson, in her official capacity as a former counselor to

the Secretary of the DOI; Susana Villanueva, in her official capacity as a Supervisory

Park Ranger for NPS; Matt Graden, in his official capacity as a Park Ranger for NPS; Matthew Wineland, in his official capacity as a Park Ranger for NPS; and "officers I-X" in their official capacities (collectively the United States or the "Government") move to dismiss the claims against them in Plaintiff Darrell House's Complaint filed December 21, 2022 ("Complaint"). Dismissal of all Counts pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) is proper.

Plaintiff asserts that Officer Graden and Officer Wineland violated Plaintiff's Fourth Amendment right to be free from the use of excessive force pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), after he was stopped for walking off trail in the Petroglyph National Monument. *See* Doc. 1 ¶¶ 127-142 (Count I). Plaintiff also brings a claim against NPS, the City of Albuquerque, and the Director of NPS under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), for failure to properly train NPS officers. Doc. 1 ¶¶ 143-152 (Count II). He alleges all named defendants violated the Religious Freedom and Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq*., claiming that the treatment of Plaintiff "created a substantial burden on his ability to pray and connect with ancestral lands." Doc. 1 ¶ 161; *id.* ¶ 153-168 (Count III). Finally, Plaintiff appeals a March 12, 2021 "NPS Decision" under the Administrative Procedures Act ("APA"), 5 U.S.C. Subchapter II, which noted Officer Graden acted appropriately and pursuant to policy and discussed NPS's interaction with tribal communities. Doc. 1 ¶¶ 169-182 (Count IV).

Counts I and II must be dismissed because no remedy under *Bivens* lies against the Government and *Monell* claims do not apply to federal agencies or federal

employees. Counts III and IV also warrant dismissal. Plaintiff failed to state a claim under RFRA because he does not allege that he was praying or engaging in religious activity when he encountered Officer Graden, nor does he allege a substantial burden on the exercise of religion. Finally, the NPS Decision is not subject to APA review and does not constitute "final agency action."

Plaintiff opposes this motion. D.N.M. LR-Civ. 7.1(a).

## FACTUAL ALLEGATIONS IN THE COMPLAINT

On December 27, 2020, NPS Park Ranger Matt Graden was on duty at Petroglyph National Monument. *See* Doc. 1 ¶¶ 1, 28, 81. Officer Graden stopped Plaintiff when he noticed Plaintiff walking off-trail with another person and a dog. *Id.* ¶ 81. Park regulations prohibit walking off-trail. 36 C.F.R. § 2.1(b). Plaintiff refused instructions from Officer Graden, including his request that Plaintiff provide his name and identification. Doc. 1 ¶ 84. After refusing to engage with Officer Graden and following several warnings and repeated attempts to deescalate the situation, Plaintiff walked away. *See id.* ¶¶ 87, 114. During the ensuing confrontation with Plaintiff, Officer Graden used a taser. *See id.* ¶¶ 87, 114.

Plaintiff was escorted back to the parking lot and was issued citations for walking off trail, refusing to provide truthful information, and obstructing law enforcement functions. *See* ¶ 95; 36 C.F.R. § 2.1(b) (prohibiting walking off-trail); 36 C.F.R. § 2.32(a)(3)(i) (prohibiting the giving of false or fictitious information to an authorized person investigating a violation of law or regulation); 36 C.F.R. § 2.32(a)(1) (prohibiting interference of a government employee or agent engaged in official duty). Plaintiff did not claim that he was praying or engaging in religious

3

activity at Petroglyph National Monument. *See* Doc. 1 (lacking any allegation that Plaintiff told Officers Graden and Wineland, or anyone, that he was engaged in religious practice).

## LEGAL STANDARDS

**A.     Dismissal for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)**

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Off. of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994). Plaintiff as "the party invoking federal jurisdiction[,] bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). Because "federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction." *U.S. ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

Motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "'generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based.'" *Navajo Agric. Prod. Indus. v. United States*, 608 F. Supp. 3d 1060, 1064 (D.N.M. 2022) (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002)). A facial attack "questions the sufficiency of the complaint," and when "reviewing a facial attack . . . a district court must accept the allegations in the complaint as true." *Holt v. United States,* 46 F.3d

1000, 1002 (10th Cir. 1995) *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). When the attack is factual, "a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. "A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." *Id.* (citations omitted); *Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003).

**B.     Dismissal for Failure to State a Claim upon which Relief may be Granted Pursuant to Fed. R. Civ. P. 12(b)(6)**

Under Fed. R. Civ. P. Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Under Fed. R. Civ. P. 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." *Id.* (internal quotation marks and citations omitted).

If the complaint contains legal conclusions, "the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to those conclusions" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009)). Thus,

5

mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" will not suffice. *Id.* at 1191 (citing *Twombly*, 550 U.S. at 555). Accordingly, in examining a complaint under Rule 12(b)(6), a court must disregard conclusory statements and look only to whether the remaining factual allegations plausibly suggest the defendant is liable. *Id.*

## ARGUMENT AND AUTHORITY

**A.    Sovereign immunity shields the United States, its agencies, and officers acting in their official capacities from *Bivens* suits.**

Plaintiff's Count I claim for alleged violation of the Fourth Amendment must be dismissed as a matter of law. Plaintiff brings this claim against Officer Graden and Officer Wineland only, "for acts and/or omissions under color of law." Doc. 1 p. 35 ("Count One, Violation of 4th Amendment Right to be Free of Excessive Force (Defendants Graden and Wineland)"); *id.* ¶¶ 141-142. Plaintiff alleges that Officer Graden and Officer Wineland "are federal employee actors whose conduct is subject to *Bivens* and the Fourth Amendment of the United States Constitution[.]" *Id.* ¶ 130. Plaintiff has sued Officer Graden and Officer Wineland in their official capacities.[1] *Id.* ¶¶ 28-29. He contends that he "has suffered damages to be determined by a jury." *Id.* ¶ 142.

The United States as sovereign is immune from suit except as it consents to be sued. *United States v. Testan*, 424 U.S. 392, 399 (1976). A suit for specific relief against a named officer of the United States in his official capacity is deemed to be a

---

[1] Officer Graden and Officer Wineland have separate legal representation for claims made against them in their individual capacities. Docs. 50, 53.

suit against the sovereign. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949). Thus, absent an express waiver of sovereign immunity by Congress, sovereign immunity generally shields the United States, its agencies, and officers acting in their official capacities from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Plaintiff has expressly pled that Officers Graden and Wineland were acting under color of law, thus invoking sovereign immunity.

Sovereign immunity prevents Plaintiff from bringing a *Bivens* claim against Officer Graden and Officer Wineland in their official capacities. The Supreme Court, in *Bivens*, held that a plaintiff who alleges a Fourth Amendment violation against federal agents and, thus, invokes the district court's "federal question" jurisdiction under 28 U.S.C. § 1331, may potentially recover money damages for resulting injuries. *Bivens*, 403 U.S. at 397. Then, as now, no federal statute provides for a damages remedy against federal officers who violate the Constitution. *See United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992) ("Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed.") (internal quotations and citations omitted); *United States v. Murdock Mach. & Eng'g Co. of Utah*, 81 F.3d 922, 930 (10th Cir. 1996) (if a waiver is not unequivocal from the text of a statute, the federal government retains sovereign immunity). The *Bivens* court asserted its general remedial powers to imply a private cause of action for damages, directly under the Constitution, against federal officers only in their *individual* capacities. *Bivens*, 403 U.S. at 397.

Plaintiff brings this *Bivens* claim seeking damages against Officer Graden and Officer Wineland in their official capacities. As a matter of law, it must be dismissed.

While in limited circumstances *Bivens* authorizes suits against federal employees in their individual capacities for violations of civil rights, it does not waive the sovereign immunity enjoyed by the United States and its agencies. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011) (*Bivens* claims may be asserted against federal officials only in their individual capacities). A *Bivens* action cannot be brought against federal employees in their official capacities, because such a suit is, in effect, a suit against the United States. *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) ("The defendants are correct, however, that a *Bivens* claim lies against the federal official in his individual capacity—not, as here, against officials in their official capacity."); *id.* ("[A]n official-capacity claim contradicts the very nature of a *Bivens* action.") (citations omitted); *Farmer v. Perrill*, 275 F.3d. 958, 963 (10th Cir. 2001) ("[T]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity."); *see also Meyer*, 510 U.S. at 484-86 (*Bivens* cause of action cannot be brought against federal agency).

Indeed, "a *Bivens action does not lie against either agencies or officials in their official capacity*." *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (citing *Meyer*, 510 U.S. at 484-86) (emphasis in original). Dismissal of Count I against Officers Graden and Wineland in their official capacities is proper.

## B.   *Monell* claims do not apply to the United States.

Count II of Plaintiff's Complaint against NPS and NPS Director Chuck Sams in his official capacity must also be dismissed. Plaintiff alleges that NPS and the NPS Director, Charles "Chuck" Sams III, are liable to Plaintiff for damages under *Monell* for "failing to train." Doc. 1 ¶¶ 145, 147, 152 ("As a direct and proximate result of

Defendant's acts and/or omissions under color of law, Plaintiff has suffered damages to be determined by a jury.").

Plaintiff's *Monell* claim brought against NPS and NPS Director Sams must be dismissed as a matter of law. In *Monell*, the Court held that Congress "intend[ed] municipalities and other local government units to be included among those persons to whom [42 U.S.C.] § 1983 applies." *Monell*, 436 U.S. at 690. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. In short, the Court held that municipal bodies and local governments sued under Section 1983 "cannot be entitled to an absolute immunity." *Id. Monell* held only that local governments qualify as "persons" under 42 U.S.C. § 1983.

In Count II, Plaintiff brings *Monell* claims against a federal agency and a federal employee, NPS and its Director. *Monell* does not provide a cause of action against these federal defendants. Alleged violations of constitutional rights may lie against municipalities pursuant to Section 1983 and *Monell*. These claims do not apply to federal agencies and federal employees. *See, e.g., Frey v. Town of Jackson*, No. 19-CV-50-F, 2019 WL 13260516, at *21, n. 9 (D. Wyo. Dec. 2, 2019) ("*Monell* is not a proper basis for claims brought against a federal agency."). Even if Plaintiff's *Monell* claim were construed as a claim under § 1983 more generally, the NPS and NPS Director are still improper defendants because NPS is a federal agency and Director Sams is an officer of the federal agency, and § 1983 has no application to

federal agencies and federal officers. *District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973) (holding that because Section 1983 proscribes discriminatory conduct "accomplished under the color of the law of any State," it "does not reach . . . actions of the Federal Government and its officers").

Plaintiff has also failed to state a claim against NPS and NPS Director Sams. None of the factual allegations in Count II pertain to NPS and NPS Director Sams. Nor does the Complaint include an allegation that NPS is a municipal entity or a local government. Doc. 1 ¶¶ 143-152. NPS is not a local government. It is a federal bureau in the Department of the Interior tasked with maintaining national parks and monuments previously managed by the Department of the Interior. *See* 16 U.S.C. 1 *et seq.*) (The National Park Service Organic Act of 1916).

Count II against NPS and the NPS Director should be dismissed.

## C.  **Plaintiff has failed to state a claim against the federal defendants under RFRA.**

Plaintiff also does not allege facts sufficient to state a claim against the federal defendants under RFRA. Plaintiff alleges that "all defendants named herein, by virtue of their status as federal agencies or federal employees acting under color of law, owed a duty of care to Mr. House as an Indigenous man seeking to pray on ancestral lands and exercise his rights under the First Amendment and further codified as a statutory right under RFRA[.]" Doc. 1 ¶ 160. Plaintiff claims that the treatment he received "created a substantial burden on his ability to pray and connect with ancestral lands." *Id.* ¶ 161. Plaintiff notes that "protection of Petroglyph [National Monument] is a compelling governmental interest which Mr. House also

supports," but the use of a taser was not the least restrictive means of achieving that interest. *Id.* ¶ 163. Plaintiff alleges that as a result of Defendants' acts and/or omissions, he "was deprived of his constitutionally protected rights under the First Amendment and RFRA." *Id.* ¶ 164.

Plaintiff claims that as a result of Defendants' acts and/or omissions "including failure to train and/or set adequate policies for the implementation of RFRA," he "suffered (without limitation) a deprivation of his constitutional religious rights and the Fourth Amendment right previously outlined to be free from excessive force, and suffered injury and ongoing trauma." *Id.* ¶ 167. Plaintiff seems to seek only non-monetary relief for this claim, alleging that "the policy and/or failure to train by Defendants . . . is pervasive and frequent." *Id.* ¶ 168; *see id.* pp. 47-78 ("Prayer for Relief").

To the extent "[t]his is a civil action for damages," sovereign immunity bars Plaintiff's request for same under Count III, the RFRA claim. *Id.* ¶ 5. RFRA does not waive the sovereign immunity of the United States to suits for monetary damages. *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 744 (10th Cir. 2019) ("The court was correct that RFRA does not waive the federal government's sovereign immunity from damages."); *see also Donovan v. Vance*, 70 F.4th 1167, 1172 (9th Cir. 2023) ("We have held that RFRA does not waive the federal government's sovereign immunity from damages.") (internal quotation marks and citations omitted).

Plaintiff otherwise fails to state a claim under RFRA. RFRA provides that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability[.]" 42 U.S.C. § 2000bb-1(a). It

provides a statutory cause of action: "A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." *Id.* § 2000bb-1(c); *see also id.* § 2000bb(b)(2) (stating one purpose of RFRA is "to provide a claim or defense to persons whose religious exercise is substantially burdened by government"). The statute defines the "exercise of religion" to mean "religious exercise" as defined in the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *Id.* § 2000bb-2(4). RLUIPA defines "religious exercise" to mean "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7). RFRA applies to "all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993." *Id.* § 2000bb-3(a).

Under RFRA, a person may challenge the application of "a rule of general applicability" if such a rule "substantially burden[s] [the] person's exercise of religion." *Id.* § 2000bb-1(a); *see also Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1125-26 (10th Cir. 2013) ("A plaintiff makes a prima facie case under RFRA by showing that the government substantially burdens a sincere religious exercise.") (citing *Kikumura v. Hurley,* 242 F.3d 950, 960 (10th Cir.2001)). The burden then shifts to the government. The government may prevail in that challenge by demonstrating in turn that "application of the burden to the person" furthers a compelling government interest" and "is the least restrictive means" of doing so. 42 U.S.C. § 2000bb-1(b); *see U.S. v. Quaintance*, 471 F. Supp. 2d 1153 (D.N.M. 2006), *aff'd* 608 F.3d 717 (10th Cir. 2010); *Gonzales v. O Centro Espirita Beneficente Uniao*

*do Vegetal,* 546 U.S. 418, 420 (2006) ("The burden then shifts to the government to show that the 'compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened.") (internal quotation marks and citations omitted).

In order to state a claim under RFRA, Plaintiff must establish the threshold requirements of the statute. *See Thiry v. Carlson,* 78 F.3d 1491, 1494 (10th Cir. 1996). Plaintiff must show that the governmental action: (1) substantially burdens, (2) his sincere exercise of religion. *Id.*

Plaintiff has not alleged he was engaged in an exercise of religion, nor has he alleged that the government's rule of general applicability—visitors to Petroglyph National Monument must stay on trail—substantially burdened his religious exercise. First, the Complaint does not contain allegations indicating that Plaintiff told Officer Graden he was praying or otherwise engaged in religious exercise. It does not contain allegations indicating that Plaintiff was in fact praying or otherwise engaged in religious exercise when he interacted with Officer Graden. The Complaint does not contain allegations indicating that Plaintiff's religious exercise at that time compelled him to move off trail, or that being off trail is part of his religious exercise. In fact, the Complaint contains allegations that affirmatively state Plaintiff and his sister "stepped off trail to practice safe physical distancing during a pandemic, to put space between themselves and the other hikers". Doc. 1 ¶ 80; *id.* ¶ 2 ("stepped off trail to practice safe physical distancing"). The Complaint plainly states that Plaintiff violated federal law in order to distance himself from hikers, *not* to pray or observe a

religion. These allegations do not state a RFRA claim. *See, e.g.*, *Mahoney v. U.S. Marshals Serv.,* 454 F.Supp.2d 21, 38 (D.D.C.2006) (dismissing RFRA claim because plaintiffs "do not allege that their religion compels them to engage in [religious] speech at the time and place and in the manner at issue here"); *id.* ("[Plaintiffs have not alleged that th[eir conduct] is part of the exercise of religion").

Second, Plaintiff has not alleged that any purported burden on religious exercise was substantial. A federal regulation may pose a substantial burden if it forces a person to engage in conduct that his religion forbids or prevents him from engaging in conduct his religion requires. *See Henderson v. Kennedy,* 253 F.3d 12, 16 (D.C.Cir.2001). At best, the Complaint alleges that any application of the NPS regulation to any person who is Native American will substantially burden the exercise of religion "[b]ecause all land is considered sacred[.]" Doc. 1 ¶ 69. This is not the standard imposed by RFRA, nor is it the standard of the First Amendment. *Legacy Church, Inc. v. Kunkel*, 472 F. Supp. 3d 926, 1058 (D.N.M. 2020), *aff'd sub nom. Legacy Church, Inc. v. Collins*, 853 F. App'x 316 (10th Cir. 2021) (the free exercise clause of "the First Amendment does not guarantee houses of worship the right to gather wherever and however they desire"). "However much we might wish that it were otherwise, government simply could not operate if it were required to satisfy every citizen's religious needs and desires." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 452 (1988).

The Supreme Court has already "established what constitutes"—and what does not constitute—"a burden on religious beliefs and practices, including traditional Indian religious practices." *Thiry*, 78 F.3d at 1495. The incidental effects

of otherwise lawful government actions "which may make it more difficult to practice certain religions[,] but which have no tendency to coerce individuals into acting contrary to their religious beliefs" do not constitute substantial burdens on the exercise of religion. *Lyng*, 485 U.S. at 450-51 (free exercise clause did not prohibit Forest Service from permitting timber harvesting and road construction in area of national forest that was traditionally used for religious purposes by members of three Native American tribes); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1063 (9th Cir. 2008) (use of recycled wastewater located in national park on mountain considered sacred by some Indian tribes would not substantially burden free exercise of religion by tribal members within meaning of RFRA).

The Complaint lacks any allegation that NPS's standard prohibition on walking off trail imposes a substantial burden on the exercise of religion under the legal standard set by the Supreme Court. Plaintiff has not even alleged that being required to stay on trails when in the Petroglyph National Monument makes it more difficult to practice a religion, which itself would still not suffice to establish any burden upon him was "substantial."

Plaintiff also has not pled the second threshold requirement: a sincere exercise of religion or a religious belief as opposed to a philosophy or a way of life. Plaintiff does not allege that he practices a Native American religion. The Complaint states only that Plaintiff told Officer Graden he was Native American. Doc. 1 ¶ 83. Not all Native Americans practice a Native American religion. By the same token, not all practitioners of Native American religions are Native American. *E.g., United States v. Hardman*, 297 F.3d 1116, 1119 (10th Cir. 2002) (explaining that persons of non-

Native American descent can practice Native American religions); *Mitchell v. Angelone*, 82 F. Supp. 2d 485, 492 (E.D. Va. 1999) (describing a party's position that a sincere belief in Native American theology is "absolutely limited to individuals with a certain percentage of Native American blood" as "def[ying] common sense and precedent") (citing *Thomas v. Review Brd. of Indiana Empl. Sec. Div.,* 450 U.S. 707, 715-16 (1981)). Plaintiff does not allege that he practices a Native American religion. *See* Doc. 1. Plaintiff alleges only that he is Native American and thereafter relies on the theory that to be Native American—regardless of whether he in fact practices a Native American religion—is to be free from enforcement of the NPS's regulations requiring visitors to stay on trail at the Petroglyph National Monument. *See United States v. Meyers*, 95 F.3d 1475, 1484 (10th Cir. 1996) (RFRA requires beliefs that are religious, "rather than a philosophy or a way of life").

The Complaint is entirely devoid of factual allegations establishing that Plaintiff was himself exercising a religion when Officer Graden approached him, that Officer Graden's interaction with him impeded his ability to pray or exercise a religion, that regulations requiring visitors to stay on trail interfered with prayer or the exercise of a religion that day, that he does in fact practice a religion, and that some tenant of a religion that he practices directed him to remain off trail. The Complaint contains no allegation that even begins to explain how and why a regulation requiring visitors to stay on trail affects in any way the exercise of religion at Petroglyph National Monument. Count III should be dismissed.

**D.   Plaintiff cannot request judicial review of the NPS Decision because it is not subject to the APA.**

Plaintiff brings Count IV of the Complaint under the APA. Plaintiff requests judicial review of the March 12, 2021 document issued by NPS. Doc. 1 ¶ 176 (stating that a March 12, 2021, press release will thereafter be referred to as the "NPS Decision"). Plaintiff describes the NPS Decision for this Court's review as containing the following: (1) a conclusion that Officer Graden acted in accordance with NPS policy on December 27, 2020 and did not engage in any wrongdoing, *id.* ¶ 176, and (2) a statement that NPS "will be working with the Pueblo and Tribal communities to develop ways to better coordinate the use of the area for ceremonial and religious purposes." *Id.* ¶ 177; *id.* ¶ 182 (alleging the NPS Decision "also signaled that NPS would actively work with Pueblo and Tribal communities to develop ways to better coordinate access to sacred and cultural sites by Native Americans").

Plaintiff requests that this Court review the NPS Decision under the APA and "set aside" its "finding of no wrongdoing by Defendant Graden." Doc. 1 ¶179; *id.* pg. 47 ¶¶ B-C. The only allegation describing why the NPS Decision may be arbitrary and capricious is that it "did not take into account Mr. House's rights under *Bivens*, under RFRA, or Executive Order 13,007 which provides guidance for federal agencies since 1996 on implementing RFRA[.]" *Id.* ¶ 181. Plaintiff includes one conclusory allegation of harm: "Mr. House was adversely affected by the NPS Decision." *Id.* ¶ 180.

Plaintiff brings his APA claim against "all defendants," to include the specifically named federal agencies and federal officials in their official capacity. The

Court should treat this claim as though it were brought against the Government only. "The APA does not provide for individual-capacity claims[ ] or monetary damages," *Duhring Res. Co. v. U.S. Forest Serv.*, No. 07-314, 2009 WL 586429, at *6 (W.D. Pa. Mar. 6, 2009), and "[a]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

The APA provides: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Agency action" is defined by the APA to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* at § 551(13). Agency action must also be final. *Id.* at § 704.

The APA waives the federal government's sovereign immunity for a limited set of suits. *Id.* § 702. It is well-established that "[s]overeign immunity is jurisdictional in nature" and "absent a waiver . . . shields the Federal Government and its agencies from suit." *Meyer*, 510 U.S. at 475. "The term 'action' as used in the APA is a term of art that does not include all conduct" on the part of the government. *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013); s*ee also Hearst Radio v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948) ("The difficulty with the appellant company's position is that the [APA] does not provide review for everything done by an agency."); *New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1191 (D.N.M. 2020) (issue of whether Plaintiff challenged a final agency action is jurisdictional under Tenth Circuit precedent).

18

First, the NPS Decision is not "agency action" as defined by the APA. *See* 5 U.S.C. § 551(13). The NPS Decision is a publicly available press release on the agency's website discussing the agency's investigation into the interaction between Plaintiff and Officer Graden because Plaintiff posted clips and videos on Instagram and Twitter.[2] It is not an agency rule, order, or license, nor is it a form of relief, or the equivalent or denial thereof. *Id*. Nor is an investigation a final agency action. *E.g.*, *Jefferson v. Harris*, 170 F. Supp. 3d 194, 217 (D.D.C. 2016) (Department of Labor's investigation into an official's misconduct was not agency action subject to review under APA).

Second, the NPS Decision does not constitute "final agency action." 5 U.S.C. § 704. Agency action is limited to acts that are "circumscribed" and "discrete," not "broad programmatic attacks" on the government's operations. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Plaintiff brings his APA claim to request that the Court "[d]irect Defendants to work with Plaintiff, Tribes, and Indigenous community [sic] of New Mexico . . . to review policies related to use of tasers on public lands" and to "[r]etain jurisdiction over this matter to empower a monitoring committee with civilian oversight including Indigenous Peoples and organizations from New Mexico to ensure Defendants' implementation of federal regulations[.]" Doc. 1 pg. 47 ¶¶ D, G. Plaintiff does not identify an NPS action that is circumscribed and discrete, or a purported failure to act where the agency had a non-discretionary

---

[2] Plaintiff presumably intends to refer to this publicly available press release from NPS: https://www.nps.gov/petr/learn/news/statement-03-12-2021.htm. *But see* Doc. 1 ¶ 177 (referring to a "NPS Decision announcement").

duty to act. An APA claim can only proceed if "an agency failed to take a discrete agency action that it is *required* to take." *Cnty. Commissioners of Cnty. of Sierra v. United States Dep't of the Interior*, 614 F. Supp. 3d 944, 959 (D.N.M. 2022) (emphasis in original); *Norton*, 542 U.S. at 64 (explaining that § 706(1) of the APA "empowers a court only to compel an agency to perform a ministerial or non-discretionary act") (internal quotations and citations omitted).

Plaintiff's requested relief evinces his intent to have this Court "adjudicate generalized grievances" to "improve an agency's performance or operations," which courts "are woefully ill-suited" to do. *City of New York v. United States Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019). Plaintiff brings this APA claim to pursue precisely the sort of "obey the law" injunctive relief or to have the Court "engage in day-to-day oversight of the executive's administrative practices" that the APA does not permit. *City of New York*, 913 F.3d at 431; *see also Chem. Weapons Working Grp., Inc. v. U.S. Dep't of the Army*, 111 F.3d 1485, 1494 (10th Cir.) (the requirement that an APA claim be based on "final agency action" bars challenges to an agency's daily operations and implementation decisions made pursuant to a broader agency plan).

Finally, the NPS Decision does not constitute final agency action because it does not fix Plaintiff's legal rights and obligations. "An action fixes legal rights and obligations when it is a definitive statement of an agency position; the action has a direct and immediate effect on the day-to-day business of the complaining party; the action has the status of law; immediate compliance with the terms is expected; and the question is a legal one fit for judicial resolution." *Cnty. Commissioners of Cnty. of Sierra v. United States Dep't of the Interior*, 614 F. Supp. 3d 944, 954 (D.N.M. 2022)

(internal quotation marks and citations omitted). The NPS Decision does not suspend or impose any requirements upon Plaintiff with which he must comply, nor does it impose any obligation upon Plaintiff. The NPS Decision does not alter the legal regime by which the agency itself operates and does not possess the status of law. The NPS Decision is not reviewable under the APA as it does not constitute final agency action.

The NPS cannot be subject to APA review for two other reasons. First, Plaintiff failed to plead any facts establishing that he has "suffered a legal wrong", *see* 5 U.S.C. § 702, because of the NPS Decision, or showing that he is "adversely affected or aggrieved by agency action." The Complaint states, "Mr. House was adversely affected[.]" Doc. 1 ¶ 180. The Court need not accept as true a legal conclusion couched as a factual allegation. *Ashcroft*, 556 U.S. at 678. Plaintiff has failed to state claim under the APA for this reason alone. Second, only final agency action "for which there is no other adequate remedy in a court" is subject to judicial review under the APA. 5 U.S.C. § 704. Plaintiff has other remedies at law, including the *Bivens* claims he identified in Count I of the Complaint and as provided by the Federal Tort Claims Act. *E.g.*, *Jacobus v. Huerta*, No. 3:12-02032, 2013 WL 673233, at *13 (S.D.W. Va. Feb. 22, 2013), *report and recommendation adopted*, 2013 WL 1723631 (S.D.W. Va. Apr. 22, 2013), *aff'd*, 540 F. App'x 208 (4th Cir. 2013) (dismissing APA claims because plaintiff could seek relief under FTCA or *Bivens*).

The NPS Decision is not subject to APA review. Count IV should be dismissed.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this

Court dismiss Plaintiff's Complaint against the Government in its entirety.


Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*/s/ Samantha E. Kelly 10/27/23*
SAMANTHA E. KELLY
BRETT C. EATON
Assistant United States Attorneys
P.O. Box 607
Albuquerque, NM 87103
(505) 224-1455
Samantha.Kelly@usdoj.gov
Brett.Eaton@usdoj.gov


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 27, 2023, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.


*/s/ Samantha E. Kelly 10/27/23*
SAMANTHA E. KELLY
Assistant United States Attorney