IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DARRELL B. HOUSE,

    Plaintiff,

vs.                                                                                         No. 22-cv-00970-SCY-KK

NATIONAL PARK SERVICE, a political
subdivision of the Federal government; CITY
OF ALBUQUERQUE, a political subdivision
of the State of New Mexico; DEB HAALAND,
in her official capacity only as U.S. Secretary
of the Interior; U.S. DEPARTMENT OF THE
INTERIOR; National Park Service Director,
CHARLES "CHUCK" SAMS III, in his official
and individual capacity; Former Deputy Director
of National Park Service, SHAWN BENGE,
in his official and individual capacity; Former
Counselor to the Secretary of the Interior,
MARGARET EVERSON, in her official and
individual capacity; Supervisory Park Ranger
SUSANA VILLANUEVA, in her official and
individual capacity; Officer GRADEN, officially
and in his individual capacity; Officer
WINELAND, officially and in his individual
capacity; officer I-X, officially and
in his individual capacity,

    Defendants.

## DEFENDANTS MATTHEW GRADEN AND MATTHEW WINELAND
## MOTION TO DISMISS THE COMPLAINT

Plaintiff filed suit against Defendants Matthew Graden and Matthew Wineland in their individual capacities pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (Count I), the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb et seq., (Count III), and the Administrative Procedures Act, 5 U.S.C. § 702, (Count IV). All these claims, as well as Plaintiff's other claims against other various Defendants, stem from a law enforcement stop at the Petroglyph National Monument on December 27, 2020. Graden and Wineland move to dismiss all individual capacity claims against them because the Complaint fails to state with particularity a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Plaintiff opposes this motion.

## STATEMENT OF THE CASE

Defendants Matthew Graden and Matthew Wineland are federal law enforcement officers employed by the National Park Service ("NPS"). Complaint ¶28-29. NPS "is vested with the authority and duty to manage and protect Petroglyph National Monument." *Id.* at ¶21. "[P]rotection of Petroglyph is a compelling government interest which [Plaintiff] supports." *Id.* at ¶163. On December 27, 2020, Plaintiff Darrell House visited Petroglyph National Monument (hereinafter "PNM") with his sister and dog. *Id.* at ¶78. "While walking through the park" Plaintiff "stepped off trail," *id.* at ¶80, "which is a violation of National Park Service regulations within Petroglyph National Monument." *Id.* at ¶102. Graden "spott[ed] two people off the trail on rocks containing petroglyphs." Rachel Frazin, *Park Service says ranger who stunned Indigenous man acted 'consistent with agency policy'*, The Hill (March 12, 2021), https://thehill.com/policy/energy-environment/543011-park-service-says-ranger-who-tased-

1

indigenous-man-acted-consistent/.[1] Graden then "called after them and followed them, order[ed] them to stop." Complaint at ¶ 81. When Graden first contacted the trespassers, he explained the reason for stopping them. *Id.* at ¶82. Graden "attempted to resolve the interaction with an educational contact and simple warning," *id.* at ¶114, but Plaintiff turned and walked away. *Id.* at ¶84. Graden asked Plaintiff "for identification and a name in order to issue a warning," *id.* at ¶136, and Plaintiff again ignored the law enforcement officer's instruction and kept walking. *Id. at* ¶84. Graden warned Plaintiff that he "would be detained if he refused to comply with identifying himself." *Id.* at ¶137. Plaintiff and his sister "provide[d] false names and birth dates to the officer." Frazin, *supra* 1. Graden called for backup. Complaint at ¶85. Plaintiff continued to resist the law enforcement officer's instructions, *id.* at ¶137-138, and Graden "deployed his taser." *Id.* at ¶88. Responding to Graden's call, Wineland arrived on scene. *Id.* at ¶93. Graden and Wineland then removed Plaintiff and his sister from PNM and issued them citations "for being off trail, refusing to provide identification, and obstruction of law enforcement functions." *Id.* at ¶95. Subsequently an "investigation found that [Graden's and Wineland's] actions were consistent with agency policy and appropriate given the totality of the circumstances, including policy to preserve the significant cultural resources of the petroglyphs." *Id.* at ¶114. Plaintiff now files suit.

## ARGUMENT

Graden and Wineland move to dismiss all claims—Count One (*Bivens*), Count Three (RFRA) and Count Four (APA)—against them in their individual capacities. A complaint, like

---

[1] Incorporated by Plaintiff into the Complaint at note 12 on page 33. *See Gallegos v. Bernalillo Cnty. Bd. of Cnty. Comm'rs*, 278 F. Supp. 3d 1245, 1259 (D.N.M. 2017) (When ruling on a motion to dismiss, courts may consider documents that the complaint incorporates into the complaint by reference).

the claims against Graden and Wineland, that "fail[s] to state a claim upon which relief can be granted" must be dismissed. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement' are insufficient." *Iqbal*, at 678. "Rather, a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court need not accept legal conclusions or mere conclusory statements as true. *Iqbal*, at 678. The Complaint falls short of these pleading requirements.

I.     **Count One Fails to State a Recognized *Bivens* Claim.**

"At bottom, creating a cause of action is a legislative endeavor." *Egbert v. Boule*, ___U.S. ___, ___, 142 S. Ct. 1793, 1802 (2022). In *Bivens*, the Supreme Court "broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernandez v. Mesa*, ___ U.S. ___, ___, 140 S. Ct. 735, 741 (2020). The Supreme Court's 1971 holding was the product of a bygone "era where the Court routinely inferred 'causes of action' that were 'not explicit' in the text of the provision that was allegedly violated." *Id.* at 740 (quoting *Ziglar v. Abbasi*, ___ U.S. ___, ___, 137 S. Ct. 1843, 1855 (2017)). "The Court subsequently extended *Bivens* to cover two additional constitutional claims: in *Davis v. Passman*, 442 U.S. 288 (1979), a former congressional staffer's Fifth Amendment claim of dismissal based on sex, and in *Carlson v. Green*, 446 U.S. 14 (1980), a federal prisoner's Eight Amendment claim for failure to provide adequate medical treatment." *Id.* at 741.

3

Since *Carlson* nearly 43 years ago, the Supreme Court has not implied a similar cause of action. *See Egbert*, 142 S. Ct. at 1799-1800 (citing 11 instances in which the Court has declined to imply new causes of action). After the "ancien regime" that produced *Bivens*, the Supreme Court has come "to appreciate more fully . . . the Constitution's separation of legislative and judicial power." *Hernandez*, 140 S. Ct. at 742. Rather than dispensing with *Bivens* altogether, though, the Supreme Court has "emphasized that recognizing a cause of action under *Bivens* is a 'disfavored judicial activity.'" *Egbert*, 142 S. Ct. at 1803 (quoting *Abbasi*, 137 S. Ct. at 1856-57). For every *Bivens* claim "separation-of-powers principles are or should be central to the analysis." *Abbasi*, 137 S. Ct. at 1857 (citing *Bush v. Lucas*, 462 U.S. 367, 380 (1983)). "In the years since it first expressed caution at the prospect of expanding *Bivens*, the Court has performed its own version of Bonaparte's retreat from Moscow and progressively chipped away at the decision—to the point that very little of its original force remains." *Silva v. U.S.*, 45 F.4th 1134, 1138-39 (10th Cir. 2022) (citation omitted).

Most recently in 2022, the Supreme Court stated plainly that "the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Egbert*, 142 S. Ct. at 1803 (citing *Hernandez*, 140 S. Ct. at 750). Unlike Congress, the courts' authority to create a cause of action for damages against a federal official "is, at best, uncertain." *Id.* (citation omitted). When answering that seminal question, "[i]f there is a rational reason to think that the answer is 'Congress'—as it will be in most every case . . . *no Bivens action may lie*." *Id.* (citing *Abbasi*, 137 S. Ct. at 1857-1858) (emphasis added). The "watchword is caution." *Id.* at 1802-1803 (citations omitted). "The Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril." *Silva*, 45 F. 4th at 1136.

4

Plaintiff's *Bivens* claim for monetary damages cannot proceed against Graden and Wineland because Congress is better suited to create a cause of action against NPS officers. Congress, not this Court, is "far more competent" to weigh the necessary "range of policy considerations" when creating a new cause of action. *Egbert*, 142 S. Ct. at 1803-804 (quotations and citations omitted).

### A. Count One Presents a New *Bivens* Context.

Count One, as alleged, is meaningfully different from *Bivens*. In *Abassi*, the Supreme Court provided a non-exhaustive list of factual differences that create a new *Bivens* context: the rank of the officers involved; the constitutional right at issue; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of the other branches; or the presence of potential factors that previous *Bivens* cases did not consider. *Abbasi*, 137 S. Ct. at 1859-860. Because differences that are "perhaps small, at least in practical terms" create a new *Bivens* context, "the new-context inquiry is easily satisfied." *Id.* at 1865; *see also Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) (summarizing Supreme Court cases rejecting new *Bivens* contexts where plaintiff asserted violations of the same clauses and same amendments from *Bivens*, *Davis*, and *Carlson*).

*Bivens* included a Fourth Amendment "claim against FBI agents for handcuffing a man in his own home without a warrant" while investigating alleged narcotics violations. *Abassi*, 137 S. Ct. at 1860 (characterizing *Bivens*). In contrast, Count One alleges a Fourth Amendment violation against NPS officers for using force against Plaintiff after he violated regulations and refused to comply with lawful orders during an investigatory stop in a national park. Simply alleging a Fourth Amendment violation does not overcome the plentiful differences between Count One and *Bivens*.

5

*Hernandez*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized"). The most glaring differences – the Supreme Court has recognized neither a *Bivens* claim against NPS officers nor a Fourth Amendment violation outside a private residence. In a case with factually analogous allegations as Count One, the Ninth Circuit dismissed a *Bivens* claim alleging excessive force by a Bureau of Land Management officer who was assisting NPS officers on public land managed by NPS. *Mejia v. Miller*, 61 F. 4th 663, 668-669 (9th Cir. 2023). The analysis in *Mejia* applies in equal force here: "unlike *Bivens*, none of the events in question occurred in or near [Plaintiff's] home. The entire incident occurred on public lands managed by BLM and the National Park Service, a place where [Plaintiff] had no expectation of privacy … [Plaintiff]'s claim presents a new context." *Id.* This Court should conclude the same.

### B. The Court Should Not Recognize the New *Bivens* Context.

"If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1803 (citation omitted). According to the 10th Circuit, "the key takeaway from *Egbert*" is "that courts may dispose of *Bivens* claims for two independent reasons: Congress is better positioned to create remedies in the context considered by the court, and the Government already has provided alternative remedies that protect plaintiffs." *Silva*, 45 F. 4th at 1141. Both apply here. First, because Count One includes a new class of defendants operating under different authority from the three recognized *Bivens* causes of action, this Court must ask "whether a court is competent to authorize a damages action not just against [Graden and Wineland] but against [NPS officers] generally. The answer, plainly, is no." *Egbert*, 142 S. Ct. at 1806 (citing *Hernández*, 140 S. Ct. at 746–747); *see supra* 3-5. Second, Congress and the Executive Branch have provided alternative remedies to deter the alleged conduct.

"[A] court may not fashion a *Bivens* remedy if Congress has already provided, or authorized the Executive to provide, an alternative remedial structure." *Egbert*, 142 S. Ct. at 1804 (citation omitted). An alternative remedy, in the *Bivens* context, is a structure "concerned solely with *deterring* the unconstitutional acts of individual officers – i.e., the focus is whether the Government has put in place safeguards to preven[t] constitutional violations from recurring." *Id.* at 1806 (internal quotations and citations omitted) (emphasis added). "Importantly, the relevant question is not whether a *Bivens* action would disrupt a remedial scheme, or whether the court should provide for a wrong that would otherwise go unredressed. Nor does it matter that existing remedies do not provide complete relief." *Id.* at 1804. It is not the role of this Court to weigh the effectiveness of the remedy provided to the plaintiff by alternative remedial schemes. *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 69 (2001). And it is not necessary that a *Bivens* alternative remedial structure "afford rights to participation or appeal." *Egbert*, 142 S. Ct. at 1806. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807. At least five remedial structures preclude a *Bivens* remedy here.

1. "In *Hernández*, [the Supreme Court] declined to authorize a *Bivens* remedy, in part, because the Executive Branch already had investigated alleged misconduct by the defendant." *Id.* at 1806 (citing *Hernández*, 140 S. Ct. at 744–745, 746–747). Same is true in this case. Graden's and Wineland's actions were referred to the NPS Office of Professional Responsibility[2] for

---

[2] NPS Office of Professional Responsibility invites the public "to file a complaint against a law enforcement officer with the National Park Service (NPS)" and offers several methods to do so. *See File a Complaint*, Office of Professional Responsibility, National Park Service, *available at* https://www.nps.gov/orgs/1358/submit-a-complaint.htm.

7

investigation, Complaint at ¶ 102, and the Executive Branch completed an investigation, *id.* at ¶ 114.

2. Congress created and authorized Inspectors General to investigate allegations of wrongdoing by federal law enforcement officers. *See* Inspector General Act of 1978, Pub. L. No. 95-452, 92 Stat. 1101, 5 U.S.C. App, §§ 2, 6, 12. The U.S. Department of Interior Office of Inspector General invites the public to present allegations of misconduct against NPS employees. *See Complaint Hotline*, Office of Inspector General, U.S. Department of Interior, *available at* https://www.doioig.gov/complaints-requests/complaint-hotline. The Supreme Court has precluded a *Bivens* remedy when the plaintiff, or anyone else, can report allegations of federal law enforcement officer misconduct for investigation. *See Egbert*, 142 S. Ct. at 1806 (citing *Hernandez*, 140 S. Ct. at 744-45). Plaintiff may do so here.

3. Congress's enactment of the Civil Service Reform Act of 1978 ("CSRA"), eight years after *Bivens*, is another alternative remedial scheme that deters the type of unlawful conduct alleged by Plaintiff. *See* Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111. The CSRA "established a comprehensive system for reviewing personnel action taken against federal employees." *Nurriddin v. Acosta*, 327 F.Supp.3d 147, 161 (D.D.C. 2018) (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)). This deterrent applies here.

4. Congress created an express cause of action in the Federal Tort Claims Act ("FTCA") which the Plaintiff can utilize to pursue a remedy for his alleged damages. The FTCA allows plaintiffs to seek monetary damages against the United States for injuries caused by an employee of the government while acting within the scope of their employment. 28 U.S.C. §§ 2674, 2675. In the wake of *Egbert*, district courts throughout the country have recognized the FTCA as an alternative remedial process precluding a *Bivens* remedy. *See e.g., Smith v. Garcia*,

No. 21-CV-578 (NGG) (RJR), 2022 WL 17852393 (E.D.N.Y. Dec. 22, 2022); *Quinlan v. Conaty*, No. 2:21-cv-00991-TSZ-JRC, 2022 WL 17822501 (W.D. Wash. Nov. 21, 2022); *Thomas v. U.S. Postal Serv.*, No. 3:22-cv-2144-L-BN, 2022 WL 16554995 (N.D. Tex. Oct. 5, 2022); *Austin v. United States*, No. 1:21-CV-95, 2022 WL 4099739 (E.D. Tex. Sept. 6, 2022); *Adams v. Martinez*, No. 15-cv-02629, 2022 WL 3645976 (D. Colo. Aug. 24, 2022); *Johnson v. Santiago*, 624 F.Supp.3d 295 (E.D.N.Y. Aug. 24, 2022); *Davis v. Greer*, No. 21-C-0995, 2022 WL 2460782 (N.D. Ill. Jul. 6, 2022); *Dotson v. Fed. Bureau of Prisons*, No. 2:21CV00147-BSM-JTK, 2022 WL 3138706 (E.D. Ark. Jun. 21, 2022). Additionally, Judge Silberman of the D.C. Circuit published a concurring opinion for the purpose of stating that the FTCA precludes a *Bivens* cause of action. *See K.O. v. Sessions*, 41 F.4th 664, 665 (D.C. Cir. 2022) (Silberman, J., concurring) ("[I]t seems obvious to me that a coinciding damages remedy authorized by the FTCA is *a fortiori* a special factor precluding a *Bivens* remedy and therefore that part of *Carlson*'s language should be ignored. This seems especially clear since courts are not supposed to supplement Congress's remedial structure with a *Bivens* claim simply because, in the courts' view, Congress did not do enough.") Plaintiff may pursue a FTCA claim.

5. Congress created a cause of action for injunctive and/or declaratory relief for alleged constitutional violations. *See* 28 U.S.C. §§ 2201, 2202. "[T]he Supreme Court has declined to extend *Bivens* . . . where other causes of action provide redress," such as "habeas or other equitable relief." *Liff v. Off. of Inspector Gen. for U.S. Dep't of Labor*, 881 F.2d 912, 918 (D.C. Cir. 2018) (internal citations omitted). "[U]nlike the *Bivens* remedy," which the Supreme Court has "never considered a proper vehicle for altering an entity's policy," injunctive relief "has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Malesko*, 534 U.S. at 74. In a case from another District alleging excessive

force by NPS law enforcement in a national park (Lafayette Park in Washington, D.C.), similar excessive force *Bivens* claims under the Fourth and Fifth Amendments were dismissed because the plaintiffs could "seek alternative equitable relief in the form of a permanent injunction." *Black Lives Matter D.C.*, 544 F.Supp.3d 15, 33-34 (D.D.C. 2022), aff'd on other grounds, *Buchanan v. Barr*, 71 F. 4th 1003, 1010 (D.C. Cir. 2023) ("Because the presence of one special factor is sufficient to preclude the availability of a *Bivens* remedy, we do not reach Appellees' other special factors arguments regarding the availability of alternative remedies"). Plaintiff seeks injunctive and declaratory relief in this case. Complaint at pp. 47-48. Any one of these five available remedial schemes is reason to dismiss Count One.

II. **Count Four (APA) Fails to State Upon Which Relief Can Be Granted.**

The Administrative Procedures Act ("APA") authorizes individuals harmed by certain executive branch agency actions to file suit against the United States and/or federal officials in their official capacity. 5 U.S.C. § 702. The APA requires that "any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance." *Id.* NPS's investigatory finding to clear Graden of wrongdoing, Complaint at ¶176, is not an "agency action" subject to APA review. 5 U.S.C. § 551(13). Graden and Wineland in their individual capacities could not provide the equitable relief sought, even if Plaintiff were to prevail on Count Four. Plaintiff's APA claims must therefore be dismissed against Graden and Wineland in their individual capacities for failing to state a claim upon which relief can be granted.

III. **Graden and Wineland Are Entitled to Qualified Immunity.**

Individual capacity suits against federal officials give rise to "substantial societal costs," including, "the risk that fear of personal monetary liability and harassing litigation will unduly

inhibit government officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The doctrine of qualified immunity mitigates these costs by ensuring that government officials are shielded from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ashcroft v. al-Kidd*, 563 U.S. 800, 818 (1982) (Qualified immunity provides "breathing room to make reasonable but mistaken judgments about open legal questions"). To overcome the protection of qualified immunity, Plaintiff must allege facts that: (1) the defendant violated his statutory or constitutional rights; and (2) "the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations and quotations omitted). The court may decide which prong to address first, *id.* at 236, but the issue of qualified immunity should be resolved "at the earliest possible stage of litigation." *Id.* at 231.

For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate" such that "every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations omitted). "[T]he right allegedly violated must be established, not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Id.* at 665 (internal quotation marks and citations omitted). Because qualified immunity "protect[s] all but the plainly incompetent or those who knowingly violate the law," *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks and citation omitted), an officer is entitled to qualified immunity when there is no controlling precedent that their conduct violated the law. *D.C. v. Wesby*, 138 S. Ct. 577, 591 (2018) (quoting *White v. Pauly*, 137 S. Ct. 458, 552

(2017)). Plaintiff has not alleged that Graden's and Wineland's respective conduct violated a clearly established rights under the Fourth Amendment (Count One) or RFRA (Count Three).

    A.    **Plaintiff Does Not Allege a Violation of a Clearly Established Fourth Amendment Right.**

To overcome qualified immunity, Plaintiff must "identify a case where an officer acting under similar circumstances" as Graden and Wineland "was held to have violated" the same right. *Wesby*, 138 S. Ct. at 591 (quoting *White v. Pauly*, 137 S. Ct. 458, 552 (2017)). Plaintiff cites *Roosevelt-Hennix v. Prickett*, 717 F. 3d 751 (10th Cir. 2013) for the proposition that "use of a taser on a defendant permissively resisting was excessive and not subject to qualified immunity." Complaint at ¶133. But *Roosevelt-Hennix* does not place the "constitutional question beyond debate." *Reichle*, 566 U.S. at 664. The allegations in *Roosevelt-Hennix* are plainly distinguishable. In that case, the plaintiff told the officers that she was physically unable to comply with their order before the resulting use of force. Plaintiff makes no such claim here. Also distinguishing, Graden, who was never trained "regarding the appropriate use force to be used against citizens such as Plaintiff," Complaint at ¶148, gave several lawful commands, *id.* at ¶136, tried to deescalate the situation, *id.* at ¶114, and warned Plaintiff, *id.* at ¶137, before the use of force. There's more. *Roosevelt-Hennix* says nothing of an officer like Wineland who arrived "after [Plaintiff] was tased," Complaint at ¶93, and did not use a taser, but allegedly "assisted" Graden, *id.* at ¶ 135, and "held [Plaintiff] down," *id.* at ¶ 93. Casting more doubt, three years after *Roosevelt-Hennix* another court in this District held that a plaintiff "failed to carry her burden to show that the law clearly established that using a Taser against a target who refused to obey verbal commands and resisted less forceful attempts to induce compliance constituted excessive force." *Youngquist v. Bd. of Comm'rs for Curry Cnty. New Mexico*, 2:15-cv-00077, 2016 WL 9725196 (D.N.M. 2016). This Court should find the same.

### B. No Reasonable Officer Would Have Known of the Alleged RFRA Violation.

The "government" violates RFRA when their conduct "substantially burden[s] a person's exercise of religion" and is not the "least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000bb-1. A substantial burden exists when the government "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 718 (1981). Plaintiff does not allege with particularity how Graden or Wineland pressured Plaintiff to modify his religious exercise or violate his religious belief. Plaintiff alleges he was tased, *not* for exercising his religion, but "for being off trail at the Petroglyphs," Complaint at ¶121, to "practice safe physical distancing during a pandemic."[3] *Id.* at ¶¶2, 80. This concession alone entitles Graden and Wineland to qualified immunity.

But that's not all. No reasonable officer in the circumstances alleged in the Complaint would have known their actions violated Plaintiff's RFRA rights. In fact, neither Graden nor Wineland could have known Plaintiff was exercising his religion. Plaintiff *never* informed Graden or Wineland that he (Plaintiff) was at PNM to pray or exercise his religious beliefs, that his religious beliefs required he go off trail, or that he was praying when he encountered first Graden and later Wineland. In Plaintiff's own telling, he showed "his turquoise necklace" and stated "he was Native American," Complaint at ¶83, but said *nothing* of religion. Simply identifying as Native American would not have signaled to any reasonable officer that Plaintiff possessed RFRA rights at PNM. More so for officers like Graden and Wineland, who "[were] acting under the supervision and control of the NPS Director and other named defendants," *id.* at ¶¶28-29, and were

---

[3] Plaintiff's excessive force allegation is properly analyzed under the Fourth Amendment, not First Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

13

never trained on what religious access Native Americans should be afforded at PNM. *Id.* at ¶¶117, 151, 162, 167.

Plaintiff contends throughout his Complaint that Native Americans should be afforded unfettered access to PNM. *See* Complaint at ¶¶54, 57,151, 159, 162, 166; *id.* at Ex. 1 (Declaration of Dr. David Tsosie) at ¶39. Indeed, Plaintiff brings this suit seeking to establish such rights. Complaint at ¶166. But Plaintiff cannot identify any case law clearly establishing a religious right to such access on December 27, 2020. *Currier v. Doran*, 242 F. 3d 905, 923 (10th Cir. 2011) ("Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point"). Likewise, there is no case law holding that officers acting under similar circumstances violated RFRA. Plaintiff is unable to identify any case law showing beyond question that one exercising religion in PNM is: not subject to park regulations; allowed off trail and on rocks containing petroglyphs; immune from investigatory stops; not required to produce identification upon request; allowed to ignore an officer's lawful orders; and/or allowed to provide false information in response to an officer's questions. *See supra* 1-2. Accordingly, no reasonable officer would have known what Graden and Wineland allegedly did under the circumstances on December 27, 2020, violated Plaintiff's RFRA rights. Graden and Wineland are thus entitled to qualified immunity.

## CONCLUSION

Based on the foregoing points and authorities, Defendants Matthew Graden and Matthew Wineland respectfully request the Court to dismiss with prejudice all claims against them in their individual capacities.

Respectfully submitted on this 27th day of October 2023,

_____
Christopher J. Keeven, NM #23-275
Debra L. Roth, NM #23-286
Shaw, Bransford & Roth, PC
1101 Connecticut Avenue NW, Suite 1000
Washington, DC 20037
Shaw Bransford & Roth P.C.
Tel: 202-463-8400
Fax: 202-833-8082

*Counsel for Defendants Matthew Graden and Matthew Wineland in their individual capacities*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2023, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means.

_/s/ Christopher J. Keeven_

Christopher J. Keeven