**UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO**

| | |
|---|---|
| DARRELL B. HOUSE,<br><br>    Plaintiff,<br><br>vs.<br><br>NATIONAL PARK SERVICE, et al.<br><br>    Defendants. | Case No. 1:22-cv-00970-SCY-KK<br><br>**Plaintiff's Memorandum in Opposition to Officer Defendants' Motion to Dismiss (Dkt. 59); In the Alternative, Motion to Allow Plaintiff to Amend Complaint or Motion to Conduct Discovery Prior to Ruling on Defendants' Motion as One for Summary Judgment** |

Plaintiff, DARRELL B. HOUSE, through counsel undersigned, hereby submits this Memorandum in Opposition to Officer Defendants' Motion to Dismiss (Dkt. 59):

## INTRODUCTION

Plaintiff adequately states claims for relief pursuant to *Bivens*, the Fourth Amendment, the Religious Freedom Restoration Act ("RFRA") and the Administrative Procedures Act ("APA") against Officer Matt Graden and Officer Matthew Wineland ("Officer Defendants") in their individual capacities. Accordingly, the motion to dismiss by Officer Defendants in their individual capacities must be denied.

Officer Defendants' motion to dismiss raises a 12(b)(6) challenge for failure to state a claim arguing that *Bivens* is in effect, dead, that Plaintiff's case presents a new context that should not be recognized by the Court, and finally, even if *Bivens* provides a measure for relief, Officer Defendants are entitled to Qualified Immunity. One point is made in passing about RFRA that "no reasonable officer would have known of RFRA violations" Dkt. 59 at 14. and another passing point about Count Four for failing to state a claim that officers could provide relief. Dkt 59, at 11.

"[T]he Fourth Amendment does not in so many words provide for its enforcement by an award of money damages for the consequences of its violation. But it is well settled that where legal rights

have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Mejia v. Miller*, 61 F.4th 663, 666 (9th Cir. 2023). Indeed, "*Bivens* is 'settled law' in the search-and-seizure context relied upon 'as a fixed principle in the law.'" *Id.* at 666-67. Contrary to Defendants' assertions, Bivens is far from "long gone." *See id.*

In the alternative to denying Officer Defendants' motion, Plaintiff seeks leave to amend the Complaint and correct factual or legal deficiencies, if any; or, should the Court convert the motion to one for summary judgment, Plaintiff seeks leave to initiate limited discovery as to the purported facts alleged by Officer Defendants.

## ARGUMENT

### I. Officer Defendants' 12(b)(6) Failure to State a Claim Challenge Fails

Importantly, in evaluating a motion to dismiss, the Court must accept all factual allegations in the complaint as true and construe the facts in the light most favorable to the plaintiff. *Anderson Living Tr. v. WPX Energy Prod., LLC*, No. CIV 12-0039 JB/SCY, 2015 WL 3543011, at *33 (D.N.M. May 26, 2015). Additionally, a court must not evaluate the underlying merits of the claim when evaluating a motion to dismiss. *Legacy Church, Inc. v. Kunkel*, 472 F. Supp. 3d 926, 1000 (D.N.M. 2020), *aff'd sub nom*. *Legacy Church, Inc. v. Collins*, 853 F. App'x 316 (10th Cir. 2021). Instead, under Fed. R. Civ. P. 8(a)(2), a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Khalik v. United Air Lines,* 671 F.3d 1188, 1190 (10th Cir. 2012). And a Plaintiff is only required to insert enough allegations "to state a claim to relief that is plausible on its face." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Accordingly, a complaint states a plausible claim for relief if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[D]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hafley*, 90 F.3d 264, 266 (8th Cir. 1996). In this regard, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Additionally, when considering a motion to dismiss, a district court must liberally construe a plaintiff's complaint and assume all factual allegations to be true. *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021).

While Defendants commonly argue a sea change in the Court's understanding of pleading standards following *Twombly*, the Supreme Court's decision in *Twombly* did not abrogate Rule 8(a)'s notice pleading standard which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." Fed. R. Civ. P. 8; *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231 (10th Cir. 2013). Here, Plaintiff has done just that and states claims for relief under the Fourth Amendment for unreasonable use of force (Count I). Plaintiff also states a claim for relief under the Religious Freedom Restoration Act (RFRA) for a violation of his religious rights to pray on his ancestral land at Petroglyph National Monument (Count III) and requests judicial review seeking declaratory relief from the NPS Decision finding of no wrongdoing for Officers Graden and Wineland—a final agency determination—under the Administrative Procedures Act (APA) (Count IV).

**II.      Officer Defendants are Liable for Their Unconstitutional Conduct Under *Bivens***

Since its decision in *Bivens*, the Supreme Court of the United States decided *Egbert v. Boule*. *Egbert* is a case that was decided over a year after the incident giving rise to Plaintiff's Complaint but months before Plaintiff filed his Complaint. While the holding in *Egbert v. Boule* modified the framework of a *Bivens* claim, it did not disturb the analysis required by *Bivens*. 596 U.S. 482 (2022). Since *Egbert*, "Courts within our [tenth] Circuit have already had to grapple with it and have noted our lack of guidance on how to do so appropriately. *Silva v. United States*, 45 F.4th 1134, 1137–38 (10th Cir. 2022).

Summarized, Courts conduct a two-step inquiry to determine if a *Bivens* remedy is available to the Plaintiff. The first step analyzes "whether the claim arises in a materially different context than *Bivens*, *Davis*, and *Carlson*—the cases representing the three general contexts in which a *Bivens* remedy has been recognized. If (and only if) the circumstances at issue present 'meaningful differences' from those established contexts, the court then assesses whether any special factors counsel hesitation in implying a remedy. [sic] Those factors include the existence of an adequate alternative remedy, absence of judicial guidance for adjudicating putative *Bivens* claims in that context, or sensitive circumstances such as national security implications." *Smith v. Trujillo*, No. 120CV00877RBJSTV, 2023 WL 5434715 (D. Colo. Apr. 27, 2023). Ultimately, the crux of the analysis hinges on one question: if "judicial intrusion" into the field would be inappropriate because Congress is better suited to permit the damages action. *Egbert v. Boule*, 596 U.S. 482, 496 (2022). The answer here is no—Plaintiff's claims are more readily adjudicated by this Court in seeking redress for constitutional harms under *Bivens*, the Constitution, RFRA (a federal law that creates a private cause of action), and declaratory relief under the APA.

### A. Plaintiff's *Bivens* Claim, Arising out of "Settled Law," is Permitted Under *Bivens*

Under the "longstanding [*Bivens*] framework" still in effect today, courts determine whether the claim at issue arose in a "new context" than the *Bivens* claims previously permitted by the Judiciary. The Supreme Court has created *Bivens* remedies in three contexts: the Fourth Amendment's Search and Seizure Clause, the Fifth Amendment's Due Process Clause, and the Eighth Amendment's Cruel and Unusual Punishments Clause. *Silva v. United States*, 45 F.4th 1134, 1138 (10th Cir. 2022).

Tenth Circuit courts have recently provided guidance on how to analyze the "new context" inquiry raised in *Egbert*. In *Smith v Trujillo*, the court held that because of the Supreme Court's recent ruling in *Egbert*, most claims will raise a "new context." 2023 WL 5434715, at *3. Despite a new context, however, a Plaintiff may still be permitted to pursue *Bivens* damages. *Smith v. Trujillo*, 2023 WL 5434715, at *3. Accordingly, the court held that despite its finding of a new context, the first part of the two-step inquiry did not "counsel hesitation in extending *Bivens* to the claims [of excessive force against prison officials]." *Id.* at *4. *See also Mejia v. Miller*, 61 F.4th 663, 666-67 (9th Cir. 2023) ("[T]hough it arises in a new context, this Court has not 'cast doubt' on extending *Bivens* within the 'common and recurrent sphere of law enforcement' in which it arose, . . .").[1]

Here, Plaintiff, in exercising his entitled, constitutional right to freedom from unreasonable force, has asserted a Fourth Amendment excessive force claim against the Officer Defendants. Notably, such Fourth Amendment claims are "settled" and "fixed principles" of law. *Mejia v. Miller*, 61 F.4th at 666-67. Plaintiff was forced to endure excruciating use of force and pain while he was

---

[1] The Ninth Circuit shares the same viewpoint, *Bivens* is "settled law" in the search-and-seizure context and relied upon "as a fixed principle in the law," but "expanding the Bivens remedy is now a 'disfavored' judicial activity." *Mejia v. Miller*, 61 F.4th 663, 666 (9th Cir. 2023).

acting in a non-threating, reasonable, and generally compliant manner. This is parallel to permitted Fourth Amendment *Bivens* claims "contexts." *See Smith v. Trujillo*, 2023 WL 5434715, at *3. Plaintiff acknowledges that under *Egbert v. Boule*, recent holdings have rendered nearly every context a "new context." *See id.* Nonetheless, under *Smith v. Trujillo*, even if Plaintiff's case is considered a "new context", the minimal distinctions of the "new context" here from what is already permitted under a Fourth Amendment *Bivens* context do not "counsel hesitation in extending *Bivens*" to Plaintiff's excessive force claims. Plaintiff was not engaging in criminal conduct, fleeing the scene, resisting arrest, or posing a threat when Officer Defendants escalated a simple situation. Rather than abide by their constitutional mandates, Officer Defendants used unreasonable force by employing a taser multiple times on Plaintiff even when he was lying on the desert floor with his hands up calling for help, unarmed, non-threatening, and compliant. Dkt 1, ¶¶ 86-95. This incident has fundamentally altered Plaintiff's life, including now living with ongoing, acute Post-Traumatic Stress Disorder that persists to date.

### B. Plaintiff's *Bivens* Claims Can be Properly Adjudicated by the Judiciary

In cases with "new contexts," a *Bivens* remedy can be permitted unless there are "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Lu v. Kwon*, 660 F. Supp. 3d 977, 985–86 (D. Haw. 2023). Special factors include adequate alternative remedial structures or sensitive circumstances like national security. *Id.* In *Egbert*, the Supreme Court reasoned that special factors and their weight may vary dependent on the circumstances because "they represent situations in which a court is not undoubtedly better positioned than Congress to create a damages action." *Egbert v. Boule*, 596 U.S. at 492.

Officer Defendants argue that Plaintiff is entitled to alternative remedies and is therefore not entitled to assert a *Bivens* claim. Plaintiff's argument, however, fails to acknowledge the Tenth Circuit's guiding framework in determining the sufficiency of alternative remedies. *See Smith v. Trujillo*, 2023 WL 5434715, at *5.

In analyzing a *Bivens* excessive force claim in *Smith v. Trujillo*, the court outlined the requirements of alternative remedies needed to prevent *Bivens* damages, stating: "[T]he relevant inquiry is whether Congress would consider the remedial process without *Bivens* 'sufficient to secure an adequate level of deterrence.' [sic] **This inquiry seems implicitly to require some inquiry into the scope of existing remedies and the extent to which those remedies provide a plaintiff redress. Inquiry into the congressional will also generally requires courts to attempt to harmonize the interpretation in issue with the existing legislative scheme and to avoid ascribing interpretations that would create absurdities."** *Smith v. Trujillo*, 2023 WL 5434715, at *5 (emphasis added). Because one purpose of *Bivens* claims is to deter the unconstitutional acts of officers, the dispositive question is whether the alternative remedy is an "adequate 'means through which allegedly unconstitutional actions . . . can be brought to the attention of the [officers and employer] and prevented from recurring.'" *Silva v. United States*, 45 F.4th at 1141 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001)).

Here, Officer Defendants assert, without factual support, that Plaintiff has alternative remedies available to him. Dkt. 59 at 7-11. Such remedies have yet to be determined as sufficient under Tenth Circuit law. According to Tenth Circuit precedent, it is insufficient to merely allege that alternative remedies exist and are sufficient to deter. *See Smith v. Trujillo*, No. 120CV00877RBJSTV, 2023 WL 5434715, at *5. Rather, the sufficiency of the remedies' deterrence must be determined prior to

determining the permissibility of a *Bivens* claim. *See id; see also Hernandez v. Causey*, No. 2:17-CV-123-TBM-MTP, 2022 WL 4594023, at *6 (S.D. Miss. Sept. 29, 2022) (finding that a Federal Torts Claims Act was deemed too inadequate of a remedy to prevent a *Bivens* claim from moving forward).

Another factor commonly analyzed is the sensitive circumstances and consequences of permitting a *Bivens* claim to move forward. For example, in *Hernandez v. Causey*, the court found the national security implications of border-security control too sensitive of a circumstance for a *Bivens* claim to be permitted. 2022 WL 4594023, at *6. In *Mejia v. Miller*, the Ninth Circuit rejected a *Bivens* claim because permitting it to move forward would result in additional mandates and responsibilities imposed on the officers. *See Mejia v. Miller*, 61 F.4th at 666-67.

Here, there are no significant circumstances or consequences warranting a denial of Plaintiff's *Bivens* claims. Unlike the Plaintiff's situation in *Hernandez v. Causey*, Plaintiff's *Bivens* claim against Officer Defendants does not implicate any sensitive, confidential, or risky information. There is no outweighing interest to protect here. Notably, Plaintiff here is merely asking the court to mandate the NPS Officer Defendants to act in conformity with their constitutional duties. Unlike the Plaintiff in *Mejia*, Plaintiff here is not asking for additional responsibilities, mandates, or rules to be imposed upon the officers. Rather, Plaintiff is seeking to have the federal officers comply and abide by their constitutional mandates, such as not subjecting an innocent person, without probable cause, to excessive force. Asking for compliance with pre-existing legal duties is not a significant concern or circumstance warranting prevention of Plaintiff's *Bivens* claims. Indeed, for many decades, it has been well established that Plaintiff has a right to be free from the excessive force he suffered by NPS officers. Notably, Defendants fail to mention any compelling interest or reason to reject Plaintiff's

Bivens claims. As such, Plaintiff's *Bivens* claims, as sufficiently plead under Tenth Circuit precedent, should be permitted to proceed.

### III. Officer Defendants are Not Entitled to Qualified Immunity

Federal officers are subject to liability for their constitutional violations when their actions are "objectively unreasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989). For liability to be imposed for the officer's violative conduct, the court must determine (1) the officer's conduct violated a constitutional right; and (2) the right was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Here, it is irrefutable that Officer Defendants violated Plaintiff's constitutional rights that were clearly established at the time of the incident on December 27, 2020. Officer Defendants do not argue in their motion to dismiss that Plaintiff did not suffer a constitutional violation. Rather, Officer Defendants merely allege that Plaintiff "has not alleged that Graden's and Wineland's respective conduct violated a clearly established rights." Dkt 59, at 13. Plaintiff's complaint, however, alleges Defendants violated Plaintiff's established rights and their constitutional duties several times. Dkt 1, ¶14 ("[B]ecause Defendants have violated their-well established duty under the Fourth Amendment to not use excessive force."). *See also* Dkt 1; ¶140; ¶141; ¶160. Accordingly, Plaintiff will assume Officer Defendants concede this point and address only the second prong of qualified immunity analysis, whether the right was clearly established at the time of the incident. As such, Officer Defendants' assertion they are entitled to qualified immunity is both unfounded and unsupported and therefore should be denied.

### A. Plaintiff's Right to Freedom from Excessive Force has Been Clearly Established for Decades

For a right to be clearly established, the plaintiff "need not cite a case 'precisely on point.'" *Packard v. Budaj*, 86 F.4th 859 (10th Cir. 2023). This is because "[the court's] analysis is not a scavenger hunt for prior cases with precisely the same facts and a prior case need not be exactly parallel to the conduct here for the officials to have been on notice of clearly established law." *Packard v. Budaj*, 86 F.4th at 868. *Romero v. Story*, 672 F.3d 880, 889 (10th Cir. 2012) ("Even in novel factual circumstances, officials can still be on notice that their conduct violated established law.").

It is undeniable that a U.S. Citizen's right to freedom from excessive force is clearly established. Indeed, the right has been established for decades. *See Monroe v. Pape*, 365 U.S. 167, *overruled by Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179 (10th Cir. 2001). Excessive force arises when an officer is objectively unreasonable in using force against the citizen. Courts look to three factors in determining the reasonableness of the officer's conduct: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts also look to other factors, such as the availability of alternative methods to engage with the citizen. *Chew v. Gates*, 27 F.3d 1432, 1441 n. 5 (9th Cir.1994).

Generally, courts look to cases with similar fact patterns to determine the objective reasonableness and potential constitutional liability of the officer's conduct. For example, in *Packard v. Budaj*, the Tenth Circuit analogized the plaintiff's circumstances with the plaintiff's circumstances

in *Fogarty v. Gallegos* to analyze the officer's constitutional violations. *Packard,* 86 F.4th at 868-870. In comparing and analyzing, the court stated:

> "The district court here determined Buck and Fogarty "'clearly established that an officer cannot shoot a protester with pepper balls or other less-lethal munitions when that protester is committing no crime more serious than a misdemeanor, not threatening anyone, and not attempting to flee.' R.1763. We agree. *Fogarty* and *Buck* provide notice ***that the use of less-lethal munitions—'as with any other type of pain-inflicting compliance technique'—is unconstitutionally excessive force when applied to an unthreatening protester who has neither committed a serious offense nor attempted to flee. [sic] And we find the notice provided by these cases sufficient to make 'clear to a reasonable officer that his conduct was unlawful' under these specific circumstances.***'" *Id.* at 868-870 (emphasis added).

Notably, courts have consistently denied qualified immunity to officers who employed force against persons engaging in innocent, non-criminal, non-threatening behavior such as Plaintiff. This is partly because "*Graham* [*v. Connor*] establishes ***that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest***." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007) (emphasis added). For example, in *Casey v. City of Federal Heights*, the Tenth Circuit analyzed whether the officers, in grabbing, tackling, and tasing Casey when he was attempting to return a document to the courthouse, were entitled to qualified immunity. In denying qualified immunity, the court explained "We do not know of any circuit that has upheld the use of a Taser immediately and without warning against a misdemeanant like Mr. Casey." *Roosevelt-Hennix v. Prickett*, 717 F.3d 751 (10th Cir. 2013) (where use of a taser on a defendant passively resisting was excessive and not subject to qualified immunity).

Even when the citizen is armed with a weapon or fleeing the scene, courts have declined to immunize officers for their excessive force because the citizen's right to freedom from such force was clearly established. *Hayes v. Cty. of San Diego*, 736 F.3d 1223, 1233-34 (9th Cir. 2013) (reversing a district court's grant of summary judgment of officers where victim approached officers while armed

11

with a knife, but where the citizen "was not charging them," "had not been ordered to stop," "was given no warning," and was not witnessed acting "erratically" with the weapon); *Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 324-25 (9th Cir. 1991) (denying summary judgment for officers who shot citizen even though citizen had a gun because it was not pointed at the officers or facing the officers who opened fire).

Here, the officer's actions, given the circumstances, are even more violative and troubling than the circumstances in *Casey v. City of Federal Heights*. Casey, was at the courthouse because he was contesting a traffic ticket and was considered a criminal or "misdemeanant." Casey was retrieving and returning documents from his car to the courthouse when the officers tackled and tasered him. Plaintiff, here, not considered a criminal or misdemeanant, but a veteran, was innocently walking and engaging in religious practice when he was subjected to similar force as Casey – tackling and tasing. Plaintiff was not armed. Nor was Plaintiff non-compliant, threatening, resistant, or even disrespectful. Needless to say, there was no objective reason or justification to impose any force on Plaintiff, let alone excessive force.

Considering that the Tenth Circuit has made it unequivocally clear that force cannot be imposed upon innocent persons that are not engaging in threatening, criminal behavior, Defendant Officers have been on notice that the conduct they engaged in was unconstitutional. Indeed, the Tenth Circuit is even more protective of citizens' freedom from force when the citizen is a misdemeanant, not fleeing, and not actively resisting. *See Casey v. City of Fed. Heights*, 509 F.3d at 1285. Plaintiff is not a misdemeanant, did not attempt to flee, did not attempt to resist (neither actively nor passively), and complied with the officers. Accordingly, Defendants' argument that Plaintiff's right to freedom from excessive force is not clearly established is in direct contradiction to this Circuit's well-

established precedent. As such, Defendants' request for qualified immunity should be denied. *Roosevelt-Hennix v. Prickett*, 717 F.3d 751 (10th Cir. 2013).

### IV. Plaintiff's RFRA and APA Claims State Claims for Relief

Officer Defendants argue that "no reasonable officer in the circumstances alleged in the complaint would have known their actions violated Plaintiff's RFRA rights… Simply identifying as Native American would not have signaled to any reasonable officer that Plaintiff possessed RFRA rights at PNM. More so for officers like Graden and Wineland… who were never trained on what religious access Native Americans should be afforded at PNM." Dkt. 59 at 13-14. Perhaps Officer Defendants could be forgiven for not knowing what rights and responsibilities Native Americans have on certain lands, if they were NPS rangers in any other place but the Southwest, the area in the United States that is home to the largest Tribal Nation reservation in the U.S., a 16-million acre Navajo Reservation that crosses Arizona, New Mexico and Utah. To not know and claim ignorance of Native American traditions, religion, and culture in the Southwest, can easily amount to willful blindness. Most importantly, however, as NPS Officers at Petroglyph National Monument, Officer Defendants have a mandated responsibility to know about and receive training consistent with RFRA to protect the Monument and the religious rights of Native Americans on their ancestral lands pursuant to the co-management agreement and enabling legislation passed by Congress creating the Petroglyph National Monument.

As alleged in Plaintiff's complaint, the City of Albuquerque and National Park Service, under the direction of Charles "Chuck" Sams, III, co-manage the Petroglyph National Monument pursuant to enabling legislation that created the park and a co-management agreement since the Monument's inception in 1990, as a result of Indigenous Peoples of the area working alongside allies to protect the

rich cultural heritage of deep spiritual significance in the area that now falls within the park, namely, rock carvings and petroglyphs. *See* Complaint (Dkt. 1) ¶¶ 51-61. The NPS Foundational Document and enabling legislation described in the complaint, explicitly mention the cooperative agreement between the City of Albuquerque and NPS for co-management and policy making. Of note, the area of the park where NPS officers unreasonably tased Mr. House when he posed no threat to anyone, is the Piedras Marcadas trail, an area of the park administered and managed by the City of Albuquerque. *See* Complaint (Dkt. 1) ¶ 80.

Officer Defendants' motion to dismiss and their actions against Plaintiff, show a lack of consideration for appropriate training on use of reasonable force by officers, as well as considerations under RFRA that must be afforded to Native Americans—something which was recognized in Section 108 of the implementing legislation creating the Petroglyph National Monument in its explicit mention of the need for "a plan to implement the joint resolution entitled American Indian Religious Freedom Act," which evolved into RFRA in time.

As stated in *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, "[i]f a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability. …'It could ... be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need'." 520 U.S. 397 (1997) (internal citations omitted). Here, NPS and City of Albuquerque are subject to a cooperative agreement through which

they must not only safeguard and protect the park, but also the people in it and respect the rights of Native Americans, to whom the monument's cultural resources and landscape hold profound meaning and significance. This includes the need for adequate training consistent with the enabling legislation that created the monument, which Officer Defendants in their Motion to Dismiss acknowledge is missing.

Finally, the APA claim against all Federal Defendants and Officer Defendants must survive because Plaintiff is requesting declaratory relief under the APA, which is a limited purpose and limited waiver of sovereign immunity, as well as any declaratory relief would be directly relevant to the conduct and actions of Officer Graden and Officer Wineland on the day of the incident.

## CONCLUSION

This Circuit has held that "granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009). In addition, the Tenth Circuit has recognized that "'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Plaintiff has met the requirements of Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) having presented legally sufficient factual allegations to state claims against Officer Defendants. Accordingly, Plaintiff respectfully requests the Court ***deny*** Officer Defendants' motion to dismiss.

In the alternative, should the Court determine there is a deficiency, Plaintiff moves this Court to grant him leave to amend his complaint within a reasonable time period. Finally, if the Court

decides to convert the motion to dismiss to one for summary judgment, Plaintiff moves for limited discovery on issues of material dispute prior to the Court rendering its judgment.

RESPECTFULLY SUBMITTED this 12th day of January, 2024.

**WATER PROTECTOR LEGAL COLLECTIVE**

By: ___/s/ Natali Segovia___
Natali Segovia, Esq. (AZ 033489)
(*Admitted Pro Hac Vice*)
P.O. Box 37065
Albuquerque, NM 87176
(602) 796-7034
nsegovia@waterprotectorlegal.org

Jeffrey Haas
Attorney at Law (NM #15587)
600 Los Altos Norte
Santa Fe, NM 87501
Jeffreyhaas42@gmail.com
(505) 469-0714
*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2024, the foregoing Opposition to Federal Defendants' Motion to Dismiss was filed electronically through the Court's CM/ECF system, which caused all parties or counsel to be served by electronic means.

Christopher J. Keeven
Debra L. Roth
Shaw, Bransford & Roth, PC
1101 Connecticut Avenue NW, Suite 1000
Washington, DC 20037
*Attorney for Defendants Matthew Graden and Mathew Wineland in their individual capacities*

Samantha Kelly
Brett C. Eaton
United States Attorney's Office
District of New Mexico – Civil
P.O. Box 607
Albuquerque, NM 87103
Brett.eaton@usdoj.gov
*Attorney for Federal Defendants*

Laura R. Callanan
Assistant City Attorney
Office of the City Attorney
P.O. Box 2248
Albuquerque, NM 87103
*Attorney for Defendant City of Albuquerque*

Dated:   January 12, 2024.

                                        Respectfully Submitted,

                                        */s/ Natali Segovia*
                                        Natali Segovia, Esq.