## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DARRELL B. HOUSE,

      Plaintiff,

      vs.                                                            No. 22-cv-00970-SCY-KK

NATIONAL PARK SERVICE, a political
subdivision of the Federal government; CITY
OF ALBUQUERQUE, a political subdivision
of the State of New Mexico; DEB HAALAND,
in her official capacity only as U.S. Secretary
of the Interior; U.S. DEPARTMENT OF THE
INTERIOR; National Park Service Director,
CHARLES "CHUCK" SAMS III, in his official
and individual capacity; Former Deputy Director
of National Park Service, SHAWN BENGE,
in his official and individual capacity; Former
Counselor to the Secretary of the Interior,
MARGARET EVERSON, in her official and
individual capacity; Supervisory Park Ranger
SUSANA VILLANUEVA, in her official and
individual capacity; Officer GRADEN, officially
and in his individual capacity; Officer
WINELAND, officially and in his individual
capacity; officer I-X, officially and
in his individual capacity,

      Defendants.

### REPLY IN SUPPORT OF MOTION TO DISMISS

      Defendants National Park Service ("NPS"); Deb Haaland, in her official capacity

as Secretary of the United States Department of the Interior; United States Department

of the Interior ("DOI"); Charles "Chuck" Sams III, in his official capacity as Director of

NPS; Shawn Benge, in his official capacity as the former Deputy Director of NPS;

Margaret Everson, in her official capacity as a former counselor to the Secretary of the

DOI; Susana Villanueva, in her official capacity as a Supervisory Park Ranger for NPS;

Matt Graden, in his official capacity as a Park Ranger for NPS; Matthew Wineland, in

his official capacity as a Park Ranger for NPS; and "officers I-X" in their official capacities (collectively the United States or the "Government") reply in support of their Motion to Dismiss (Doc. 58), filed October 27, 2023. Dismissal of all claims against the Government is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

No remedy under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) lies against the Government. Plaintiff concedes this. Doc. 67 p. 7. Count I must be dismissed. *Monell* claims do not apply federal agencies or federal employees. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) (local governments are "persons" subject to suit under 42 U.S.C. § 1983). Plaintiff cites no cases or legal authority extending *Monell* to the Government. Count II must also be dismissed. Doc. 67 pp. 8-12. Counts III and IV also warrant dismissal. Plaintiff failed to state a claim under RFRA and the NPS Decision—be it the press release identified in the Complaint, or the internal investigation referred to in the press release—do not constitute "final agency action" and are not subject to APA review. *See* Doc. 67 p. 16.

A.    **Sovereign immunity precludes Plaintiff's *Bivens* claim against Officer Graden and Officer Wineland in their official capacities.**

Plaintiff asserts that Officer Graden and Officer Wineland violated Plaintiff's Fourth Amendment right to be free from the use of excessive force pursuant to *Bivens* after he was stopped for walking off trail in the Petroglyph National Monument. *See* Doc. 1 ¶¶ 127-142 (Count I). In *Bivens*, the Supreme Court held that a plaintiff has a private cause of action for damages, directly under the Constitution, against federal officers only in their *individual* capacities. *Bivens*, 403 U.S. at 397. Plaintiff concedes this: "Plaintiff will concede that the *Bivens* official capacity claims against Officer Defendants are frustrated by sovereign immunity and should be dismissed[.]" Doc. 67 p. 7. Count I

against Officer Graden and Officer Wineland in their official capacities must be dismissed.

**B.    *Monell* claims do not apply to the United States regardless of an agreement between it and a local government.**

Plaintiff brings a claim against NPS, the City of Albuquerque, and the Director of NPS under *Monell* for failure to properly train. Doc. 1 ¶¶ 143-152 (Count II). He alleges that NPS and the NPS Director, Charles "Chuck" Sams III, are liable to Plaintiff for damages under *Monell*. Doc. 1 ¶¶ 145, 147, 152.

In *Monell*, the Supreme Court held that local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. In short, the Court held that municipal bodies and local governments sued under § 1983 "cannot be entitled to an absolute immunity." *Monell*, 436 U.S. at 701. *Monell* held only that local governments qualify as "persons" under 42 U.S.C. § 1983.

In Count II, Plaintiff brings *Monell* claims against a federal agency and a federal employee, NPS and its Director. *Monell* does not provide a cause of action against these federal defendants. Alleged violations of constitutional rights may lie against municipalities pursuant to § 1983 and *Monell*. These claims do not apply to federal agencies and federal employees. *See, e.g., Frey v. Town of Jackson*, No. 19-CV-50-F, 2019 WL 13260516, at *21, n. 9 (D. Wyo. Dec. 2, 2019) ("*Monell* is not a proper basis for claims brought against a federal agency.").

Plaintiff responds that § 1983 "has also been made coextensive to apply to private parties or non-state actors and the Federal Bureau of Investigation (FBI, a federal

agency) or its agents," Doc. 67 p. 9. The Complaint does not contain any citation to § 1983, and this overstates the breadth of § 1983 claims. Plaintiff cites *Hampton v. Hanrahan*, 600 F.2d 600 (7th Cir. 1979) and *West v. City of Mesa*, 128 F. Supp. 3d 1233 (D. Ariz. 2015). Neither of these cases discuss or involve *Monell*. No party to them brought claims under *Monell*. Both cases involve the 42 U.S.C. § 1985, seeking redress for conspiracy, a cause of action neither pursued by Plaintiff in this case nor factually pled in the Complaint. Both cases stem from an intricate series of facts detailing significant coordination between the FBI and local officials for purposes of implementing a program or policy addressing violence and crime. They are inapt and inapplicable to Plaintiff's claims here and his effort to extend liability under *Monell* to federal agencies and federal employees.

In *Hampton*, plaintiffs sued agents of the FBI, and city and state law enforcement officers under § 1983 for a violation of civil rights. *Hampton*, 600 F.2d at 607. The plaintiffs alleged the federal defendants participated in a conspiracy with the city and state defendants to deprive them of numerous constitutional rights under § 1985, including the First, Fourth, Fifth, Eighth, Ninth, Thirteenth, and Fourteenth Amendments. *Hampton*, 600 F.2d at 607. The complaint also asserted that the federal defendants engaged in malicious prosecution by conspiring with local officials to deprive the plaintiffs of their civil rights. *Hampton*, 600 F.2d at 607. The federal defendants interacted with the city and state defendants following the adoption of a national covert counterintelligence program intended to prevent violence and to neutralize political organizations, such as those identified as "hate groups." *Hampton*, 600 F.2d at 608.

In *West*, an arrestee who was tried and convicted in state court of conspiracy to commit armed robbery sued the city and an FBI agent for, among other things, a violation

4

of § 1983 alleging malicious abuse of process and malicious prosecution, and civil conspiracy under § 1985. *West*, 128 F. Supp. 3d at 1238. The FBI agent worked with a detective on the FBI's violent Street Gangs Task Force, a joint operation between the FBI and the city's police department. *West*, 128 F. Supp. 3d at 1238-1239. Plaintiff also alleged they engaged in a conspiracy under § 1985. *West*, 128 F. Supp. 3d at 1240. On appeal, the Ninth Circuit held that the district court properly dismissed plaintiff's claims against the FBI for malicious prosecution and abuse of process, and his § 1985 conspiracy claim. *West v. City of Mesa*, 708 F. App'x 288, 290, 294 (9th Cir. 2017).

To the extent these cases stand for a proposition that could possibly be pertinent to this case, *West* states that "[i]ndividuals acting under color of federal law may be held liable under § 1983 only if they conspired or acted jointly with state actors to deprive the plaintiffs of their constitutional rights." *West*, 128 F. Supp. 3d at 1240 (internal quotations and citations omitted). These cases are legally and factually distinct from Plaintiff's claims. Plaintiff does not allege any kind of conspiracy existed or any facts that show one existed; Plaintiff indicates merely that the City of Albuquerque and NPS co-manage the Petroglyph National Park. Plaintiff does not bring a claim under § 1985 or allege facts that would support one. Plaintiff seeks liability under *Monell* in Count II, not conspiracy, yet he does not cite any cases or other authorities that extend *Monell* liability to federal agencies and federal employees. *See* Doc. 67 p. 10. Plaintiff also cites *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), wherein the plaintiff alleged civil rights violations under § 1983 and sought to hold only city officials, not federal government actors, liable. Moreover, Plaintiff's *Monell* claim against NPS and the NPS Director supposedly alleges a "failure to train," but *Monell* held that "[r]espondeat superior or vicarious liability will not attach under § 1983." *City of Canton*, 489 U.S.at 385 (citing

*Monell*). None of the paragraphs in Count II even pertain to NPS or the NPS Director. All paragraphs relate to the conduct of the City of Albuquerque, not the federal agency or federal official. Doc. 1 ¶¶ 148, 149, 150, 151.

Plaintiff claims that because § 1983 claims are "co-extensive to apply to" non-state actors, "a *Monell* claim which extends from a Section 1983 claim . . . could be extended" by this Court to federal agencies and actors, such as NPS and the NPS Director. Doc. 67 p. 9. The Court should decline such an invitation. *Monell*—the claim Plaintiff brings in his Complaint—does not provide a right of action against NPS and the NPS Director. Plaintiff concedes that the City and NPS "co-manage" Petroglyph National Monument; they do not co-conspire to deprive visitors of constitutional rights under § 1985. Doc. 67 p. 11. Insofar as Plaintiff seeks damages from the United States under Count II, the Federal Tort Claims Act ("FTCA") was his opportunity to do so. *See* 28 U.S.C. § 1346(b); *see* Doc. 1 ¶ 152 ("As a direct and proximate result of Defendant's acts and/or omissions under color of law, Plaintiff has suffered damages to be determined by a jury."). The FTCS provides that an individual suit against the United States is the exclusive remedy for persons with claims for damages resulting from the tortious conduct of federal employees acting within the scope of their employment.

Count II against the Government must be dismissed.

## C.   Plaintiff has not sufficiently pled a claim under RFRA, nor can he.

Plaintiff alleges all named defendants violated the Religious Freedom and Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq.*, claiming that the treatment of Plaintiff "created a substantial burden on his ability to pray and connect with ancestral lands." Doc. 1 ¶ 161; *id.* ¶ 153-168 (Count III). Plaintiff fails to state a claim under RFRA.

6

RFRA provides that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability[.]" 42 U.S.C. § 2000bb-1(a). Under RFRA, a person may challenge the application of "a rule of general applicability" if such a rule "substantially burden[s] [the] person's exercise of religion." *Id.* § 2000bb-1(a); *see also Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1125-26 (10th Cir. 2013) ("A plaintiff makes a prima facie case under RFRA by showing that the government substantially burdens a sincere religious exercise.") (citing *Kikumura v. Hurley,* 242 F.3d 950, 960 (10th Cir.2001)). In order to state a claim under RFRA, Plaintiff must establish the threshold requirements of the statute. *See Thiry v. Carlson,* 78 F.3d 1491, 1494 (10th Cir. 1996). Plaintiff must show that the governmental action: (1) substantially burdens, (2) his sincere exercise of religion. *Id.*

Plaintiff's Complaint lacks allegations to state a claim under RFRA. The Complaint does not allege that Plaintiff was praying when approached by Officer Graden or that he was engaged in any kind of religious exercise at the time. The Complaint does not allege that his religious exercise required him to violate federal law requiring visitors to stay on trial. In short, Plaintiff does not allege that laws requiring visitors to stay on trail substantially burdens his sincere exercise of religion, or that he was in fact engaged in the exercise of his religion at the time Officer Graden approached him.

The declaration does no better. Doc. 67 pg. 13 (complaining that "Federal Defendants ignore altogether" the declaration attached to the Complaint). The declaration is not a proper attachment to Plaintiff's pleading and the Court should not consider it. Fed. R. Civ. P. 10(c); *see, e.g.*, *Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015) (affidavits are not "written instruments" under Rule 10(c) and therefore cannot be considered in ruling on a motion to dismiss under Rules 12(b)(1) and 12(b)(6)). But if it

does, the declaration attached to Plaintiff's Complaint neither discusses the necessity of walking off trail for religious exercise at Petroglyph National Monument, nor explains that the burden of remaining on trail is substantial. It contains statements about the culture of indigenous people and identifies various places of cultural significance. *See* Declaration of David J. Tsosie, ¶¶ 25-27. The declaration discusses the history of Native interactions with Western European Explorers and various governmental policies and statutes enacted in the late 1900s. *Id.* ¶¶ 16-18. The declaration does not state that the declarant was present at Petroglyph National Monument on December 27, 2020, or that the declarant has personal knowledge about or otherwise witnessed Plaintiff's presence at Petroglyph National Monument that day. The declarant does not state that he has ever met or become acquainted with Plaintiff, either before or after December 27, 2020. *See id.* ¶¶ 1-15. At most, the declarant states that he "believes" Plaintiff was on a "quest to offer a prayer" at Petroglyph National Monument." *Id.* ¶ 41. The declaration does not state that Plaintiff was engaged in religious exercise or that his doing so required him to violate the Park's regulations. As such, the declaration does not provide facts sufficient to plead a RFRA claim. If Plaintiff was praying or engaged in religious exercise at the time he was approached by Officer Graden and he was required to be off trail to do so, he would have pled as much in the Complaint.[1]

---

[1] To the extent Plaintiff seeks leave to file an amended complaint, he must do so by separate motion and he must meet his burden of establishing the legal standards applicable to that request. *See* Doc. 67 p. 17 ("Plaintiff moves this Court to grant him leave to amend his complaint[.]"). The Court need not consider this request while resolving the Motion to Dismiss. D.N.M.LR-Civ. 15.1 (motion to amend pleading must include a copy of the proposed amended complaint); Fed. R. Civ. P. 15 (legal standards for seeking to amend pleadings).

Insofar as Plaintiff seeks damages against the Government for a RFRA violation, those claims must be dismissed. Plaintiff represents that "the Tenth Circuit recently ruled that RFRA provides a claim for money damages action," citing *Ajaj v. Fed. Bureau of Prisons*, 25 F.4th 805 (10th Cir. 2022). Doc. 67 p. 14. That is not the holding of this case, nor is it accurate to state that the United States Supreme Court held the same in *Tanzin v. Tanvir*, 592 U.S. 43 (2020). An individual may seek damages under RFRA for claims brought against federal officials sued *in their individual capacities*. *Tanzin*, 592 U.S. at 45 (holding that RFRA "includes claims for money damges against Government officials in their individual capacities"). *Ajaj* simply "hold[s] that qualified immunity can be invoked by officials sued in their individual capacities for money damages under RFRA." *Ajaj*, 25 F.4th at 813. Neither *Tanzin* nor *Ajaj* held that RFRA provides a claim for money damages against the Government and federal officials sued in the official capacities. Plaintiff does not address the cases cited in the Motion to Dismiss plainly holding that sovereign immunity bars damages claims against the federal government. Doc. 58 p. 11.

Plaintiff's claim for damages under RFRA against the United States must be dismissed, as must the RFRA claim in its entirety as insufficiently pled.

**D.   Plaintiff cannot request judicial review of the NPS Decision because it is not subject to the APA.**

Plaintiff appeals an "NPS Decision" under the Administrative Procedures Act ("APA"), 5 U.S.C. Subchapter II. Doc. 1 ¶¶ 169-182 (Count IV). Plaintiff describes the NPS Decision for this Court's review as containing the following: (1) a conclusion that Officer Graden acted in accordance with NPS policy on December 27, 2020, and did not engage in any wrongdoing, Doc. 1 ¶ 176, and (2) a statement that NPS "will be working

with the Pueblo and Tribal communities to develop ways to better coordinate the use of the area for ceremonial and religious purposes." *Id.* ¶ 177; *id.* ¶ 182 (alleging the NPS Decision "also signaled that NPS would actively work with Pueblo and Tribal communities to develop ways to better coordinate access to sacred and cultural sites by Native Americans").

Plaintiff responds that the NPS Decision it requests this Court review is not the press release identified in the Complaint, but the internal investigation performed by NPS after the interaction between Plaintiff and NPS officers on December 27, 2020. Doc. 67 p. 16. Plaintiff requests that this Court review the NPS Decision under the APA and "set aside" its "finding of no wrongdoing by Defendant Graden." Doc. 1 ¶179; *id.* pg. 47 ¶¶ B-C. Plaintiff includes one conclusory allegation of harm: "Mr. House was adversely affected by the NPS Decision." *Id.* ¶ 180. Plaintiff believes the internal investigation "resulted in a finding that denied [Plaintiff] of any relief[.]" Doc. 67 p. 16.

Internal investigations do not constitute "final agency action" subject to APA review, therefore the Court lacks jurisdiction over Count IV. *New Mexico v. McAleenan*, 450 F. Supp. 3d 1130, 1191 (D.N.M. 2020) (issue of whether Plaintiff challenged a final agency action is jurisdictional under Tenth Circuit precedent). "Agency action" is defined by the APA to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Agency action must also be final. 5 U.S.C. § 704. "The term 'action' as used in the APA is a term of art that does not include all conduct" on the part of the government. *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013); s*ee also Hearst Radio v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948) ("the [APA] does not provide review for everything done by an agency").

The internal investigation is not "agency action" as defined by the APA. *See* 5 US.C. § 551(13). NPS investigated the interaction between Plaintiff and Officer Graden because Plaintiff posted clips and videos on Instagram and Twitter. As noted in the Motion to Dismiss and not rebutted by Plaintiff in response, an internal investigation is not an agency rule, order, or license, nor is it a form of relief, or the equivalent or denial thereof. *Id*. Nor is an investigation a final agency action. *E.g.*, *Jefferson v. Harris*, 170 F. Supp. 3d 194, 217 (D.D.C. 2016) (Department of Labor's investigation into an official's misconduct was not agency action subject to review under APA). Plaintiff cites no legal authority or cases holding otherwise.

The internal investigation is also not "final agency action." 5 U.S.C. § 704. Agency action is limited to acts that are "circumscribed" and "discrete," not "broad programmatic attacks" on the government's operations. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Plaintiff brings his APA claim to request that the Court "[d]irect Defendants to work with Plaintiff, Tribes, and Indigenous community [sic] of New Mexico . . . to review policies related to use of tasers on public lands" and to "[r]etain jurisdiction over this matter to empower a monitoring committee with civilian oversight including Indigenous Peoples and organizations from New Mexico to ensure Defendants' implementation of federal regulations[.]" Doc. 1 pg. 47 ¶¶ D, G. Plaintiff does not identify any agency action that is circumscribed and discrete, or a purported failure to act where the agency had a non-discretionary duty to act. An APA claim can only proceed if "an agency failed to take a discrete agency action that it is *required* to take." *Cnty. Commissioners of Cnty. of Sierra v. United States Dep't of the Interior*, 614 F. Supp. 3d 944, 959 (D.N.M. 2022) (emphasis in original); *see also Norton*, 542 U.S. at 64.

Plaintiff asks the Court to "adjudicate generalized grievances" to "improve an agency's performance or operations," which courts "are woefully ill-suited" to do. *City of New York v. United States Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019). Plaintiff brings this APA claim to pursue precisely the sort of "obey the law" injunctive relief or to have the Court "engage in day-to-day oversight of the executive's administrative practices" that the APA does not permit. *Id*. He does not rebut this in his response. *See* Doc. 67.

The internal investigation is no more a "final agency action" as delineated by the APA than the press release identified in the Complaint. Count IV should be dismissed. If it is not, this claim can only proceed by the framework of *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994). The Motion to Dismiss cannot be converted to a summary judgment motion as Plaintiff requests. Doc. 67 p. 17 (requesting discovery "if the Court decides to convert the motion to dismiss to one for summary judgment"); *Intrepid Potash-New Mexico, LLC v. United States Dep't of the Interior*, No. 09-CV-01135 RB-RLP, 2010 WL 11595114, at *6 (D.N.M. May 10, 2010) ("[C]converting Defendants' Rule 12(b)(1) motion into a motion for summary judgment would be inappropriate, as the Court is acting as an appellate court reviewing agency action, and motions for summary judgment 'are conceptually incompatible with the very nature and purpose of an appeal.'"). However, *Olenhouse* does not preclude this Court from summarily dismissing this APA claim. *Kane Cnty. Utah v. Salazar*, 562 F.3d 1077, 1086 (10th Cir. 2009).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court dismiss Plaintiff's Complaint against the Government in its entirety.

Respectfully submitted,
ALEXANDER M.M. UBALLEZ
United States Attorney

 */s/ Samantha E. Kelly 2/16/24*
SAMANTHA E. KELLY
BRETT C. EATON
Assistant United States Attorneys
P.O. Box 607
Albuquerque, NM 87103
(505) 224-1455
Samantha.Kelly@usdoj.gov
Brett.Eaton@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 16, 2024, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Samantha E. Kelly 2/16/24*
SAMANTHA E. KELLY
Assistant United States Attorney