IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DARRELL B. HOUSE,

      Plaintiff,

     vs.                                                    No. 22-cv-00970-SCY-KK

NATIONAL PARK SERVICE, a political
subdivision of the Federal government; CITY
OF ALBUQUERQUE, a political subdivision
of the State of New Mexico; DEB HAALAND,
in her official capacity only as U.S. Secretary
of the Interior; U.S. DEPARTMENT OF THE
INTERIOR; National Park Service Director,
CHARLES "CHUCK" SAMS III, in his official
and individual capacity; Former Deputy Director
of National Park Service, SHAWN BENGE,
in his official and individual capacity; Former
Counselor to the Secretary of the Interior,
MARGARET EVERSON, in her official and
individual capacity; Supervisory Park Ranger
SUSANA VILLANUEVA, in her official and
individual capacity; Officer GRADEN, officially
and in his individual capacity; Officer
WINELAND, officially and in his individual
capacity; officer I-X, officially and
in his individual capacity,

      Defendants.

**<u>DEFENDANTS MATTHEW GRADEN'S AND MATTHEW WINELAND'S
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

Plaintiff's individual capacity claims against Defendants Matthew Graden and Matthew Wineland under *Bivens* (Count I), the Religious Freedom Restoration Act ("RFRA") (Count III), and the Administrative Procedure Act ("APA") (Count IV) all fail to allege facts upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); Doc. 59. Plaintiff's Opposition provides no factual or legal reason for this Court to recognize the new *Bivens* context presented in Count I, to judicially expand the APA to allow individual capacity claims for the National Park Service's personnel management decision challenged in Count IV, or to deny Graden's and Wineland's assertion of qualified immunity against suit in Counts I and III.

## ARGUMENT

### I.    Count I Fails to State a Recognized *Bivens* Claim.

Plaintiff's *Bivens* claim is markedly different from the three (3) causes of action recognized by the Supreme Court. The Court from 1971 to 1979 created three (3) new claims for monetary damages. *See Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980). In the 43 years since, the Court has declined twelve (12) times—every time it was asked—to create a new *Bivens* action. *See Egbert v. Boule*, 596 U.S. 482, 486 (2022) (citations omitted) (listing the 11 cases prior to *Egbert* where the Court declined to extend *Bivens*). This Court should do the same.

"Now long past the heady days in which the Court assumed common-law powers to create causes of action, [the Court] [has] come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of legislative and judicial power." *Egbert,* 596 U.S. at 491 (quotations and citations omitted). To be sure, *Bivens* is still good law, *but* the Court has made clear that "recognizing a cause of action under Bivens is disfavored judicial activity." *Id*. Because of the many "reason[s] to think that Congress might be better equipped to

1

create a damages remedy" than the judiciary, *Egbert,* 596 U.S. at 492, this Court must dismiss Count I.

### a.   Count I is meaningfully different from the three accepted *Bivens* claims.

Plaintiff acknowledges his *Bivens* claims present a new context. Doc. 68 p. 5-6.[1] For good reason. "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017). Even small differences create a new context. *Id*. at 149. Given this low bar, Plaintiff's *Bivens* claims against Graden and Wineland clearly present a new context. The Court has never recognized a *Bivens* claim against NPS officers, or a Fourth Amendment violation occurring outside a private residence. These differences present a new *Bivens* context. *See Abbasi*, 582 U.S. at 149. Plaintiff concedes that "most claims will raise a 'new context'," but believes his Fourth Amendment excessive force claim for damages should be permitted. *See* Doc. 68 p. 5. The Court says otherwise. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). Plaintiff's Opposition ignores *Hernandez* and highlights text from 9th Circuit opinions to create the impression that Fourth Amendment excessive force claims routinely proceed. Examining the case cited by Plaintiff reveals the fallacy of his position.

Plaintiff cites *Mejia v. Miller* for the proposition that Fourth Amendment claims are "settled" and "fixed" principles under *Bivens*. *See* Doc. 68 pp. 5-6. *Mejia* notes that *Bivens* is settled law in the search and seizure context, and then clarifies (in the same sentence) that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Mejia*, 61 F.4th at 666. As such, *Mejia* ultimately declined to extend *Bivens* because the plaintiff failed to "identify any

---

[1] All page citations are to the page numbers generated by CM/ECF system at the top right of the pleading.

Supreme Court cases recognizing a *Bivens* excessive force claim against a BLM officer." *Id.* at 668. *Mejia* ultimately concluded that alleged Fourth Amendment violations "on public lands managed by BLM and the National Park Service, a place where Mejia had no expectation of privacy" are materially different than *Bivens*. *Id.* The same applies here. Plaintiff has not identified any Supreme Court cases recognizing a *Bivens* excessive force claim against an NPS officer (because none exist). And like *Mejia*, the events at issue here occurred on public lands. This is a new context.

### b. Congress is best suited to create a damages remedy.

This Court must decide whether "special factors indicate that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492 (quotation and citation omitted). After *Egbert*, "[t]he question is no longer whether the Judiciary is well suited, but whether Congress is better suited." *Mejia*, 61 F.4th at 667. The Motion highlighted this question and its plain answer. *See* Doc. 59 pp. 7-11. The Opposition largely ducked it.

Without elaborating, Plaintiff argues that his claims are "more readily adjudicated by this Court in seeking redress for constitutional harms under *Bivens*, the Constitution, RFRA (a federal law that creates a private cause of action), and declaratory relief under the APA." Doc. 68 p. 4. Plaintiff does not explain *how* the Judiciary is better suited than Congress to create a new damages remedy. Ignoring the seminal question does not change the inevitable answer. Congress, not this Court, is better suited to provide a monetary damages award. *Mejia*, 61 F.4th at 669 ("Under *Egbert*, rarely if ever is the Judiciary equally suited as the Congress to extend *Bivens* even modestly. The creation of a new cause of action is inherently legislative, not adjudicative.")

### c. Alternative remedial schemes counsel hesitation against extending *Bivens*.

The Motion identified five congressionally created structures concerned "with *deterring* the unconstitutional acts of individual officers" that preclude this Court from creating the new *Bivens* cause of action presented in Count I. *Egbert*, 596 U.S. at 498 (emphasis added). Plaintiff agrees that the relevant inquiry is whether the alternative remedial scheme is sufficient to deter unconstitutional behavior. Doc. 68 p. 7. But Plaintiff's analysis misses the mark. The Opposition does not address why any of the five alternative remedies identified in the Motion, *see* Doc. 59 pp. 8-11, are not sufficient deterrents. Plaintiff only references one of the identified alternative remedial schemes—an explanatory parenthetical of a Southern District of Missouri holding that the Federal Torts Claim Act is an insufficient alternative remedy. Doc. 68 p. 8. Plaintiff did not explain how that holding was applicable to the facts of this case, or why this Court should adhere to it rather than the nine (9) cases listed in the Motion all holding that the FTCA is a special factor.

Plaintiff also seeks to narrow the analysis to only remedial schemes recognized by the Supreme Court. The Court has never imposed such a limitation. Still, at least three remedial schemes identified in the Motion have been recognized by the Court. The Court declined to extend *Bivens* where the Executive Branch already investigated the alleged misconduct by the defendants. *Egbert,* 596 U.S. at 497-98. Here, the NPS Office of Professional Responsibility, in the Executive Branch, investigated Graden's and Wineland's actions. *See* Doc. 59 pp. 8-9. Second, the Supreme Court precluded a *Bivens* remedy when a plaintiff could report allegations of law enforcement misconduct for investigation. *Egbert,* 596 U.S. at 497-98. Plaintiff too may report Graden and Wineland to the Department of Interior Office of Inspector General. *See* Doc. 59 p. 9. The threat of internal investigation and resulting adverse personnel action sufficiently deters unconstitutional conduct. Third, the Court declined to extend *Bivens* where injunctive relief was available. Doc. 59 p. 10. "[U]nlike the *Bivens* remedy, which we have never considered a proper vehicle for altering

an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). Plaintiff similarly seeks injunctive and declaratory relief in this case. Doc. 1 pp. 47-48.

Other remedial schemes not yet specifically recognized by the Court also preclude a *Bivens* remedy. The Civil Service Reform Act of 1978 ("CSRA") "established a comprehensive system for reviewing personnel action taken against federal employees." Doc. 59 p. 9. The threat of a personnel action deters the type of unlawful conduct alleged by Plaintiff. As discussed above, the Federal Tort Claims Act ("FTCA") allows plaintiffs to seek monetary damages against the United States for injuries caused by a federal employee acting in the scope of their employment. *Id*. This Court should follow the lead of the many other courts across the country that have recognized the FTCA as an alternative remedial scheme precluding a *Bivens* remedy, *id*. at 9-10, to include another District in this Circuit. *See Adams v. Martinez,* No. 15-CV-02629-NRN, 2022 WL 3645976, at *4 (D. Colo. Aug. 24, 2022), *aff'd*, No. 22-1425, 2023 WL 5273771 (10th Cir. Aug. 16, 2023). Any of these five remedial schemes is reason to dismiss Count I.

Plaintiff does not dispute the availability of these schemes or even their deterrent effect. Instead, Plaintiff dismisses them outright because they have "yet to be determined as sufficient under Tenth Circuit law" and "the sufficiency of the remedies' deterrence must be determined prior to determining the possibility of a *Bivens* claim." Doc. 68 p. 8. The Supreme Court disagrees. It "must be left to Congress, not the federal courts" to determine the adequacy of relief provided. *Egbert,* 596 U.S. at 498. Plaintiff's reliance on *Smith v. Trujillo*—holding that the Bureau of Prison's ("BOP") grievance process foreclosed a *Bivens* remedy—does not fare better. No. 120CV00877RBJSTV, 2023 WL 5434715 (D. Colo. Apr. 27, 2023). Ultimately, the *Trujillo* court determined it was bound to hold that the existence of the BOP grievance program precludes a

*Bivens* remedy. *Id* at *6. Plaintiff similarly has access to NPS's internal grievance program. *See* Doc. 59 pp. 8-11. The Opposition ultimately concludes that Defendants "fail to mention any compelling interest or reason to reject Plaintiff's *Bivens* claims." Doc. 68 pp. 8-9. This is not the relevant test. As the Court explained in *Egbert*, the question is whether this Court is better suited than Congress to create a new claim for monetary damages, and the answer is plainly no. *See Egbert,* 596 U.S. at 496, 499.

## II.     Plaintiff Fails to State an APA Claim Against Graden and Wineland.

The Administrative Procedure Act ("APA") allows an individual adversely affected by agency action to file suit against the United States and/or federal officials in their official capacity. 5 U.S.C. § 702. The APA does *not* create a cause of action against federal officials in their individual capacity. *See Id*.; *Duhring Res. Co. v. U.S. Forest Serv.*, No. CIV.A.07-0314E, 2009 WL 586429, at *6 (W.D. Pa. Mar. 6, 2009); *Liming Wu v. Bernhardt*, No. 17CV0113 RB/KRS, 2019 WL 1639946, at *4 (D.N.M. Apr. 16, 2019). Because APA does not permit suits against officials in their individual capacity, Graden and Wineland are not the appropriate parties for Plaintiff's claim for declaratory relief under the APA. What's more, the March 12, 2021 NPS press release at issue is not an "agency action" subject to APA review. *See* 5 U.S.C. § 551(13).

The Opposition says that the APA claim against Graden and Wineland in their individual capacity must survive because "any declaratory relief would be directly relevant to the *conduct* and *actions* of Officer Graden and Officer Wineland on the day of the incident." Doc. 68 p. 15. (emphasis added). While that may be true, Plaintiff cannot explain how Graden and Wineland could possibly effectuate the relief sought. As NPS line officers, they do not set the policies or procedures of the agency. Even if Plaintiff somehow succeeds on Count IV (he should not), Graden

and Wineland would play zero role in "setting aside" the investigative findings clearing them of wrongdoing. Count IV must dismissed against Graden and Wineland.

### III.    Graden and Wineland are Entitled to Qualified Immunity.

Because Graden and Wineland asserted qualified immunity, it is Plaintiff's burden to show that they are not entitled. *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015). To do so, Plaintiff must "identify a case where an officer acting under similar circumstances" as Graden and Wineland "was held to have violated" the same rights Graden and Wineland allegedly violated in Count I and Count IV. *See Dist. of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (quoting and citing *White v. Pauly*, 580 U.S. 73, 79 (2017)).

### A.    No Alleged Violation of a Clearly Established Fourth Amendment Right.

Plaintiff has not identified case law articulating a clearly established Fourth Amendment right. *See Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010). Plaintiff asks this Court to broadly frame the Fourth Amendment right at issue here as "the right to freedom from excessive force." Doc. 68 p. 10. Plaintiff may not be required to cite a case "precisely on point," but this Court must not define "clearly established law" too generally, as Plaintiff tries to do. *See Packard v. Budaj*, 86 F.4th 859, 868 (10th Cir. 2023). Defining "clearly established law" with specificity is particularly important in excessive force cases, where it is "sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id*. (citing *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021)).

The Opposition does not identify a single case in which an officer acting under similar circumstances as Graden and Wineland was held to have violated the prohibition on excessive force. Plaintiff does not address the analogous case from this District identified in the Motion, *Youngquist v. Bd. of Comm'rs for Curry Cnty. New Mexico*, 2:15-cv-00077, 2016 WL 9725196

(D.N.M. 2016). Doc. 59 p. 13. In *Youngquist*, the plaintiff "failed to carry her burden to show that the law clearly established that using a taser against a target who refused to obey verbal commands and resisted less forceful attempts to induce compliance constituted excessive force." *Id*. A recent 10th Circuit opinion puts the alleged "clearly established right" further into question. *See Est. of Melvin by & through Melvin v. City of Colorado Springs, Colorado*, No. 23-1070, 2023 WL 8539921, at *9 (10th Cir. Dec. 11, 2023) (holding that Tenth Circuit precedent does not clearly establish that the plaintiff's rights were violated when he was tasered while he was not "subdued" and after "he was informed that he was being detained" and was "instructed to stop resisting.")

The cases cited in the Opposition, on the other hand, are easily distinguishable from the alleged facts here. Plaintiff relies on *Casey v. City of Fed. Heights*, 509 F.3d 1278 (10th Cir. 2007) for the proposition that courts have denied qualified immunity to "officers who employed force against persons engaging in innocent, non-criminal, non-threatening behavior such as Plaintiff." Doc. 68 p. 11. *Casey* is markedly different. In *Casey,* a police officer confronted the plaintiff for trying to remove his court file from the courthouse building. *Casey*, 509 F.3d 1278 at 1279-81. After the plaintiff tried to walk away, one officer put the plaintiff's arm into an arm lock and jumped on his back and a second officer fired her taser without warning. *Id.* Because the plaintiff did not try to flee, and the officers never instructed the plaintiff to stop resisting or told him that he was under arrest, the court concluded that the officer's treatment was excessive for a "nonviolent misdemeanant who was neither dangerous nor fleeing." *Id.* at 1282.

Unlike *Casey*, Graden gave lawful commands, tried to deescalate the situation, and warned Plaintiff before the use of force. Doc. 59 p. 13; Doc. 1 ¶ ¶ 114, 135-38. Also dissimilar to *Casey*, Plaintiff here attempted to flee and was noncompliant. Doc. 1 ¶ ¶ 82-84 (When Graden demanded identification, Plaintiff stated "they had done nothing wrong and began walking back to the trail.");

¶ ¶ 136-137 (Graden repeatedly asked for identification to issue a warning and Plaintiff instead walked back towards the trail, which prompted Graden to inform Plaintiff he would be detained if he refused to comply). Plaintiff and his sister even "provided false names and dates of birth to the officer." *See* <u>NPS completes investigation following December 2020 law enforcement incident at Petroglyph National Monument,</u> NPS.Gov, https://www.nps.gov/petr/learn/news/statement-03-12-2021.htm.[2] Given these differences, *Casey* is *not* "a case where an officer acting under similar circumstances" as Graden and Wineland "was held to have violated" the same right. *See Wesby*, 583 U.S. at 64.

Plaintiff's reliance on *Hayes v. Cnty. of San Diego*, 736 F.3d 1223 (9th Cir. 2013) and *Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir. 1991) also misses the mark. Both cases involved use of a lethal firearm. These cases cannot possibly support a "clearly established" right related to Graden's use of a taser and Wineland's mere presence. Because Plaintiff has not identified an analogous case, Plaintiff cannot overcome Graden's and Wineland's assertion of qualified immunity. Count I must be dismissed.

**B.      No Reasonable Officer Would Have Known of the Alleged RFRA Violation.**

Graden and Wineland are entitled to qualified immunity against Count IV, too. The Government violates RFRA when their conduct "substantially burden[s] a person's exercise of religion" and is not the "least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000bb-1. A substantial burden exists when the government "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v.*

---

[2] This Court may consider the press release. *See Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 (10th Cir. 2002) (a court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity)

*Review Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 718 (1981). Plaintiff does not allege with particularity how Graden or Wineland pressured him to modify his religious exercise or violate his religious beliefs. *See* Doc. 59 p. 14. The Opposition likewise does not explain how Graden and Wineland's actions burdened Plaintiff's religious exercise.

In his own telling, Plaintiff was off trail to "practice safe physical distancing during a pandemic," Doc. 1 ¶ ¶ 2, 80, and then was tased for "being off trail at the Petroglyphs." Doc. 1 ¶ 121. He does *not* allege he was tased for exercising his religion or articulate how he was forced to modify his religious practice. Plaintiff never informed Graden or Wineland that he was exercising his religious beliefs, or that he was off trail to pray. Instead, he showed Graden "his turquoise necklace" and stated "he was Native American." Doc. 1 ¶ 83. No reasonable officer in Graden's or Wineland's position would have known Plaintiff was exercising his religious beliefs. Plaintiff does not point to any case law indicating that any religious group has unfettered access to PNM. He fails to identify any case law clearly establishing a religious right to violate park regulations with impunity, to be immune from a law enforcement stop, and/or to disregard an officer's lawful instructions.

The Opposition suggests that Graden and Wineland "could be forgiven for not knowing what rights and responsibilities Native Americans have on certain lands, if they were NPS rangers in any other place but the Southwest." Doc. 68 p. 13. Plaintiff characterized any ignorance of Native American traditions and religion as "willful blindness." *Id*. Graden and Wineland were not engaged in "willful blindness." In the context of the facts alleged in the Complaint, all Plaintiff had to do was inform Graden and Wineland he was engaged in religious activity. Instead, Plaintiff gave them a false name. Plaintiff also alleges that Graden and Wineland had a "mandated responsibility to know about and receive training consistent with RFRA to protect the Monument

and the religious rights of Native Americans on their ancestorial lands pursuant to the co-management agreement and enabling legislation passed by Congress creating the Petroglyph National Monument." Doc. 68 p. 13. This claim is in tension with the Complaint, where Plaintiff alleges that rangers, like Graden and Wineland, are *not* trained on access to PNM for ceremonial or religious purposes. Doc. 1 ¶ ¶ 117, 161, 162. Plaintiff's claims against other Defendants are based on their alleged failure to properly train officers. Doc. 1 ¶ ¶ 143-152. This alleged failure of training is part of the reason why no reasonable officer would have known their conduct violated RFRA. Plaintiff cannot have it both ways. He cannot plausibly allege with particularity that (1) a reasonable officer in Graden's or Wineland's position would have known their actions violated RFRA because they would have been trained on Native American religious rights, *and* (2) that NPS and City of Albuquerque neglected to provide this mandatory training. The Complaint does not allege with particularity that any reasonable officer under the circumstances would have known their actions violated Plaintiff's RFRA rights.

## IV.    Plaintiff Should Not Be Allowed to Amend his Complaint at this Time.

Plaintiff should not be afforded the opportunity to amend his Complaint to cure its numerous deficiencies. Doc. 68 p. 1. Pursuant to Federal Rule of Civil Procedure 15(a), a party may amend its complaint once as a "matter of course" within twenty-one days of serving its pleading, or within twenty-one days after service of a motion to dismiss. Fed. R. Civ. P. 15(a). In all other cases, a party may amend its complaint only with the opposing party's consent or with the court's leave, which should be given freely when justice so requires. *Id.*

### A.    Plaintiff is Not Entitled to Amend His Complaint as a Matter of Course.

Plaintiff may not amend his Complaint as a "matter of course" because he failed to file an Amended Complaint within twenty-one days of service of Graden's and Wineland's Motion on

October 27, 2023. On November 9, 2023, the parties filed a joint motion for an extension of time which, in relevant part, requested a 60-day extension for Plaintiff to file a response to Graden and Wineland's Motion, which set the response deadline to January 12, 2024. *See* Doc. 61. On January 12, 2024, Plaintiff served his Opposition. *See* Doc. 68.

Plaintiff failed to amend his Complaint within twenty-one days of service of Graden's and Wineland's Motion. Plaintiff served his Opposition on January 12, 2024, two and a half months after being served with Graden's and Wineland's Motion on October 27, 2023. Although Plaintiff received an extension to file his Opposition, that extension does not automatically extend the deadline to amend a complaint as a matter of course under Rule 15(a). *See Gutierrez v. Johnson & Johnson Int'l, Inc.,* 601 F. Supp. 3d 1007, 1019 (D.N.M. 2022) (finding an amended complaint untimely, even though the parties agreed to an extension for filing a motion to dismiss and response); *see also Hayes v. D.C.*, 275 F.R.D. 343, 345 (D.D.C. 2011) ("[A]n extension of time to file an opposition to a motion to dismiss does not automatically also extend the deadline to amend a complaint under Rule 15(a)"). Therefore, Plaintiff has no right to amend his Complaint as a matter of course under Rule 15(a)(1).

### B.     The Court Should Not Grant Plaintiff Leave to Amend.

Defendants Graden and Wineland oppose Plaintiff's improperly pled request to amend the Complaint because any amendment would be futile for the reasons described throughout this Reply. *See* D.N.M.LR-Civ. 15.1; *see also Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006); *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021).

### CONCLUSION

Defendants Matthew Graden and Matthew Wineland respectfully request the Court to dismiss with prejudice all claims against them in their individual capacities.

Respectfully submitted on this 16th day of February 2024,


*/s/ Christopher J. Keeven*

Christopher J. Keeven, NM #23-275
Debra L. Roth, NM #23-286
Shaw, Bransford & Roth, PC
1101 Connecticut Avenue NW, Suite 1000
Washington, DC 20037
Shaw Bransford & Roth P.C.
Tel: 202-463-8400
Fax: 202-833-8082

*Counsel for Defendants Matthew Graden and Matthew Wineland in their individual capacities*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2024, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means.


*/s/ Christopher J. Keeven*

Christopher J. Keeven